**KAHN GAUTHIER SWICK, LLC**
Michael A. Swick (MS-9970)
Kim E. Miller (KM-6996)
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730
Fax: (504) 455-1498

**KAHN GAUTHIER SWICK, LLC**
Lewis S. Kahn
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 455-1400
Fax: (504) 455-1498

*Counsel for the Chen Group and*
*Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRICKMAN INVESTMENTS, INC., Individually And On Behalf of All Others Similarly Situated, )<br>Plaintiff, )<br>vs. )<br>ALLOT COMMUNICATIONS, LTD., YIGAL JACOBY, RAMI HADAR AND ADI SAPIR, )<br>Defendants. ) | DOCKET NUMBER: 07-cv-3455<br><br>HON. RICHARD J. HOLWELL |

(Caption continued on the following page)

**MEMORANDUM IN FURTHER SUPPPORT OF THE MOTION OF THE CHEN GROUP TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL; AND IN OPPOSITION TO ALL OTHER COMPETING MOTIONS**

| | |
|---|---|
| GERALD BILGER, Individually And On Behalf of All Others Similarly Situated, | DOCKET NUMBER: 07-cv-3815 |
| Plaintiff, | HON. RICHARD J. HOLWELL |
| vs. | |
| ALLOT COMMUNICATIONS, LTD., YIGAL JACOBY, RAMI HADAR AND ADI SAPIR, | |
| Defendants. | |
| ELIYAHU MOKHTAR, Individually And On Behalf of All Others Similarly Situated, | DOCKET NUMBER: 07-cv-5456 |
| Plaintiff, | HON. RICHARD J. HOLWELL |
| vs. | |
| ALLOT COMMUNICATIONS, LTD., YIGAL JACOBY, RAMI HADAR AND ADI SAPIR, | |
| Defendants. | |
| SHANNON VINSON, Individually And On Behalf of All Others Similarly Situated, | DOCKET NUMBER: 07-cv-5457 |
| Plaintiff, | HON. RICHARD J. HOLWELL |
| vs. | |
| ALLOT COMMUNICATIONS, LTD., YIGAL JACOBY, RAMI HADAR AND ADI SAPIR, | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ...................................................................... iv

**INTRODUCTION** .................................................................................... 1

**ARGUMENT** ............................................................................................ 3

    **I) The Court Should Consolidate the Related Actions** ......................... 3

    **II) The Chen Group Should Be Appointed Lead Plaintiff** ..................... 4

        **A. The Chen Group Meets the Requirements of the PSLRA and Is "The Most Adequate Plaintiff"** ....................................................................................... 4

            **1. The Chen Group Has the Largest Financial Interest** ............................ 4

            **2. The Chen Group Satisfies the Requirements of Rule 23** ....................... 5

            **3. The Competing Movants Cannot Rebut the Presumption That The Chen Group Is the Most Adequate Plaintiff and Their Motions Must Fail** ............................. 8

        **B. The Dikla Mondial Mutual Fund Should Not Be Appointed Lead Plaintiff** ............... 9

            **1. Dikla Mondial Has Provided No Evidence of Its Authority To Act As Lead Plaintiff In This Litigation** .............................................................................. 9

            **2. Dikla's Failure To Investigate The Troubling Record Of Its Proposed Lead Counsel Sabo Renders It Inadequate To Be Appointed Lead Plaintiff** ............. 11

        **C. The Remaining Lead Plaintiff Movant, Brickman Investments Group, Has Losses Well Below Those Of The Chen Group** ........................................................ 13

    **III) The Court Should Appoint the Chen Group Lead Plaintiff and Approve the Chen Group's Selection of Counsel** ................................................................... 13

    **CONCLUSION** ..................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

*Casden v. HPL Technologies, Inc.*, 2003 U.S. Dist. LEXIS 19606 at *30 (N.D. Cal. Sept. 29, 2003) ...................................................................................................................... 9

*Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 441 (W.D. Pa. 2001)................... 9

*In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ................................................................ 4, 6

*In re Comverse Tech., Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 69900 at *3 (D.N.Y. 2006).......... 4

*In re Crayfish Company Sec. Litig.*, 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. 2002) ................... 7

*In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005)..................................................... 6

*In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431032 (E.D. Va. 2000) ................... 3

*In re Oxford Health Plaints, Inc.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998)......................................... 8

*In re Party City*, 189 F.R.D. 91, 106 (D. NJ 1999)....................................................................... 5

*In re Peregrine Sys. Sec. Litig.*, 2002 U.S. Dist. LEXIS 27690 at *58-*59 (S.D. Cal. October 9, 2002) ....................................................................................................................... 10

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002)........ 2

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) ..................................................... 3

*Kaplan v. Gelfond*, 240 F.R.D. 88, 95 (S.D.N.Y. 2007)................................................................ 2

*Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D. 101, 107 (E.D.N.Y. 2005)................... 9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, No. 03-cv-8264, 2004 U.S. Dist. LEXIS 9571, at *53 (S.D.N.Y. May 27, 2004)...................................... 5

*Smith v. Suprema Specialities*, 206 F. Supp. 2d 627, 634-635 (D.N.J. 2002) ............................. 10

*Sofran v. LaBranch & Co.*, 220 F.R.d. 398, 401 (S.D.N.Y. 2004)................................................. 4

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ... 5, 9, 11

*Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001) ................................................................ 6, 13

**STATUTES**

15 U.S.C. § 77z-1(a) ................................................................................................................ 1

15 U.S.C. § 77z-1(a)(3)(B) ...................................................................................................... 5

15 U.S.C. § 77z-1(a)(3)(B)(iii) ........................................................................................... 3, 4, 6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(bb) ........................................................................................ 13

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ............................................................................................ 6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) ........................................................................................... 2

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa) .................................................................................... 11

15 U.S.C. § 77z-1(a)(3)(B)(v) ......................................................................................... 11, 13

**RULES**

Fed. R. Civ. P. Rule 23(a) ....................................................................................................... 6

Fed. R. Civ. P. Rule 23(g) ....................................................................................................... 6

Fed. R. Civ. P. Rule 42(a)) ...................................................................................................... 3

# INTRODUCTION

On July 2, 2007, the following movants filed motions to be appointed Lead Plaintiff in this case: (1) the Chen Group, with losses of $42,789.64; (2) Dikla Mondial Mutual Fund ("Dikla"), with purported losses of $40,992.20; and (3) Brickman Investments Group ("Brickman"), a two-person group with combined losses of $11,548.00.

All three movants support consolidation. At this time, the Chen Group hereby opposes the other three competing motions for appointment as Lead Plaintiff because the Chen Group is the most adequate plaintiff who otherwise satisfies the requirements of Section 27(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The Chen Group has suffered the largest loss among the competing movants, and is a small, cohesive three person group that has been working together to prosecute this action for the Class, and who each signed a declaration ("Chen Group Decl.") which evidences their understanding of their responsibilities should they be appointed Lead Plaintiff and their willingness to work together and fully supervise counsel. *See* Miller Declaration in support of this motion ("Miller Suppl. Decl."), Exhibit A, Chen Group Decl. ¶8.

Dikla cannot be appointed Lead Plaintiff because it is a mutual fund comprised of clients who own shares of the fund, and has therefore suffered no financial loss itself as the result of any purchase of Allot stock. Instead, any loss on the purchase of Allot shares is that of the *owners* of shares of Dikla's mutual fund. Under a well developed body of PSLRA case law, Dikla is akin to an *investment advisor* who manages the investments of clients. As such, Dikla has failed to produce any proof whatsoever evidencing that its hundreds, or possibly thousands, of clients

1

have provided it with the attorney-in-fact authority to bring litigation on their behalf or seek the Lead Plaintiff position in this litigation. *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002) (court held that investment advisor lacked standing to claim the financial interest of its clients); *See also Kaplan v. Gelfond*, 240 F.R.D. 88, 95 (S.D.N.Y. 2007) ("Courts have found standing for an investment advisor if it is authorized to act as attorney-in-fact with unrestricted decision making authority for the funds at issue.").

Further confounding the issue of Dikla's authority is the unexplained appearance of another apparent Israeli entity, Migdal Mutual Funds Management Ltd. ("Migdal"), as signateur on Dikla's sworn Certification filed with its Lead Plaintiff motion, and the scribbling of an unrecognizable symbol on the signature line of the Certification, along with the Hebrew translation for Migdal stamped under the signature line. Even if Dikla had the legally cognizable attorney-in-fact authority from its clients to bring suit and its Lead Plaintiff motion, its omission of a clearly identifiable authorized agent on the signature line demonstrates that its lack of authority is fatal to its application.

Next, Dikla's failure at this early juncture in the litigation to investigate and oversee its own chosen Lead Counsel for the Class, the Law Offices of Jacob Sabo ("Sabo"), a firm with its offices in Israel, should alone render it inadequate under the Federal Rules of Civil Procedure ("FRCP") Rule 23 to lead this litigation. Dikla has selected Lead Counsel for the Class who has misrepresented his credentials in securities class action litigation, as explained herein. Dikla's oversight is indicative that its counsel, and not Dikla, would be in control of this litigation were it to be appointed Lead Plaintiff. Consequently, Dikla has proven that it will not fairly and adequately protect the interests of the Class through even the most basic of investigations, and should not be appointed Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

Brickman, the third Lead Plaintiff movant, cannot be appointed because its losses for two individual investors, a combined $11,548.00, are dwarfed by those of the Chen Group, and also by the Chen Group's largest investor, Shichao Chen. Accordingly, this Court should appoint the Chen Group Lead Plaintiff and appoint its chosen counsel Kahn Gauthier Swick, LLC ("KGS") as Lead Counsel for the Class.

## ARGUMENT

### I) The Court Should Consolidate the Related Actions

All movants agree that the related actions should be consolidated. The Federal Rules of Civil Procedure provide for consolidation of actions pending before a court that assert "common questions of law or fact," Rule 42(a), and the PSLRA provides for consolidation of related federal securities actions, before the Court determines the Lead Plaintiff issue. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii). Here, all four of the securities class actions filed involve common—indeed virtually identical—questions of law and fact and assert claims on behalf of the aggrieved Allot Communications investors during similar. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431032 (E.D. Va. 2000) (actions alleging different class period and naming different defendants consolidated pursuant to Fed. R. Civ. P. Rule 42(a)). Furthermore, defendants have standing to object to consolidation (as opposed to Lead Plaintiff appointments) but have not done so. Therefore, consolidation of these actions is proper and should be granted at this time. *See, e.g.*, *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

**II) The Chen Group Should Be Appointed Lead Plaintiff**

    **A. The Chen Group Meets the Requirements of the PSLRA and Is "The Most Adequate Plaintiff"**

        **1. The Chen Group Has the Largest Financial Interest**

Pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the Action. If the plaintiff with the largest losses satisfies the typicality and adequacy requirements of Rule 23, he is entitled to Lead Plaintiff status. *In re Comverse Tech., Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 69900 at *3 (D.N.Y. 2006). Courts have uniformly held that the financial loss prong of the statutory test is by far the most important factor in selecting a Lead Plaintiff. *See Sofran v. LaBranch & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004)("Because the Harper Woods Group has lost the most money in connection with the purchase of LaBranche securities…that group is deemed the most adequate plaintiff so long as it fulfills the remaining statutory requirements."); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)("the Reform Act provides in categorical terms that the only basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy.") (Emphasis original).

The Chen Group, with losses of $42,789.64 (*see* Declaration of Kim E. Miller in Support of the Motion of the Chen Group to Consolidate Related Actions; to Be Appointed Lead Plaintiff; and to Approve Proposed Lead Plaintiff's Choice of Counsel, ("Miller Decl.") Exhibit A), clearly has the "largest financial interest in the relief sought by the Class" among those seeking appointment as Lead Plaintiff. By contrast, the closest competitor, Dikla—whose Motion is defective because Dikla has provided no evidence of its authority to act as Lead Plaintiff in this litigation—has purported losses of approximately $40,992.20. The other moving group,

Brickman, has losses of approximately $11,548.00. Thus, the Chen Group is the presumptive "most adequate plaintiff."

### 2. The Chen Group Satisfies the Requirements of Rule 23

Pursuant to 15 U.S.C. § 77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." The Courts have made it clear that the PSLRA's focus of the inquiry under this provision is on the typicality requirement of Rule 23(a)(3) and the adequacy requirement of Rule 23(a)(4). *See*, *e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, No. 03-cv-8264, 2004 U.S. Dist. LEXIS 9571, at *53 (S.D.N.Y. May 27, 2004). Furthermore, the Courts have uniformly held that, at the Lead Plaintiff appointment stage, the determination of whether a proposed Lead Plaintiff "otherwise satisfies the requirements of Rule 23" is subject only to a preliminary analysis. *See, e.g., Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003), citing *In re Party City*, 189 F.R.D. 91, 106 (D. NJ 1999) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.")

As discussed in the Chen Group's opening Memorandum, the Chen Group easily satisfies both the typicality and adequacy requirements of Rule 23.

Furthermore, the Chen Group Declaration, submitted herewith, demonstrates that the members of the Chen Group understand their obligations as Lead Plaintiffs and will discharge those responsibilities actively, diligently, competently, and faithfully. *See* Chen Group Decl. at ¶8. Moreover, the large loss of the Chen Group creates a significant incentive to vigorously prosecute the claims in this Action. Finally, as demonstrated by the Kahn Gauthier Swick

("KGS") firm resume submitted at Miller Decl. Ex. C, the Chen Group has selected as proposed Lead Counsel highly-skilled attorneys with extensive experience in successfully prosecuting securities class actions. *See*, *e.g.*, *In re Cavanaugh*, 306 F.3d at 735. ("Lawyers and law firms work hard to develop reputations for success, and we in the legal profession widely accept the proposition that an aggressive, competent lawyer can make a substantial difference in the outcome of the case."); *see also* Fed. R. Civ. P. Rule 23(g). Thus, the Chen Group will fairly and adequately represent the Class.

As the Chen Group has sustained the largest losses, and meets the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23(a), in accordance with 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), the Chen Group is presumptively the "most adequate plaintiff." Because that presumption has not been and cannot be rebutted by proof by any competing movant group, the Motion of the Chen Group should be granted in full.

The PSLRA expressly refers to the "***person or group of persons*** that…has the largest financial interest in the relief sought…" 15 U.S.C. § 77z-1(a)(3)(B)(iii). As a result, courts in this District permit plaintiffs to aggregate their losses for the purposes of Lead Plaintiff selection, particularly when the lone competing movant who claims to be an institutional investor is rendered inadequate under the PSLRA. *See In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005) (the "majority view" in the Second Circuit holds that "unrelated investors may aggregate;" and the Court concluded that "where aggregation would not displace an institutional investor as presumptive Lead Plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as Lead Plaintiff, assuming they meet other necessary requirements."); *Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (permitting aggregation of the losses of a "group of seven" unrelated investors); *In re Crayfish Company Sec. Litig.*, 2002

U.S. Dist. LEXIS 10134 (S.D.N.Y. 2002) (this Court finds that a group of seven individuals does not "present a group so cumbersome as to deliver the control of the litigation into the hands of the lawyers.").

The Chen Group is comprised of a small, cohesive three-member group of experienced, hands-on investors who were damaged by defendants' wrongdoing as alleged in the Action. Aggregation of the losses of the three investors comprising the Chen Group—Shichao Chen, Cynthia Hober, and Robert Johnkeer—is appropriate here, and the varied experiences of the three members of the group will benefit the Class.

In addition to the certifications provided by the members of the Chen Group, the group has also provided a Joint Declaration providing the backgrounds for each group member, evidencing a range of business and professional experience, and enabling the group to bring a broad spectrum of knowledge to bear in the decision-making process in this Action, which will benefit the Class. The Declaration of the three group-members also demonstrates that the members of the Chen Group are fully familiar with their fiduciary obligations as class representatives under Rule 23(a)(4), and they have explained, in great detail, how they will proactively discharge those obligations. *See generally* Chen Group Decl.

All members of the group are cognizant of their responsibilities: to protect the interests of the Class; to direct counsel; and to render the ultimate decisions on matters of importance to the litigation. They have formed lines of communication, and intend to regularly use those lines of communication, with and without counsel present, to discuss the status of the Action and to make their joint decisions in the case. They have determined that they can direct this case among themselves on a consensus basis; however, they have also put in place a mechanism to deal with disagreements. They have also designated one member of their group to act as a point person in

the event of a situation where they cannot meet in time to make a decision. Their choice in that highly unlikely event is an experienced investor with a degree in business management, Shichao Chen. Shichao Chen represents a solid choice of emergency "point" person for the group. *See id.* The Chen Group will thus clearly act independently and evaluate the advice of its counsel rather than follow it blindly. They will also act as a "single voice" in directing counsel and will bring their broad experiences to the forefront to protect the interests of the Class. *See In re Oxford Health Plaints, Inc.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (recognizing the benefit of "pooling" the "knowledge and experience" of "multiple Lead Plaintiffs."). Furthermore, should this court at any time during the briefing or hearing see a need to break up or reconfigure the group to select one or more members of the group as Lead Plaintiff, each member of the Chen Group has expressed their willingness to serve as Lead Plaintiff and their support of reconfiguration in the event they are not chosen as Lead Plaintiff. *See* Chen Group Decl. at ¶13.

In sum, the Chen Group represents precisely the type of "group of persons" – small, cohesive, cognizant, and in control – that Congress envisioned when it enacted the PSLRA.

### 3. The Competing Movants Cannot Rebut the Presumption That The Chen Group Is the Most Adequate Plaintiff and Their Motions Must Fail

As discussed above in great detail, the Chen Group has the largest losses—approximately $42,789.64, meets the adequacy and typicality requirements of Rule 23, and the presumption that it should be appointed Lead Plaintiff cannot be rebutted. The Chen Group suffers from none of the serious adequacy and typicality concerns from which Dikla suffers, discussed below, and has losses more than 300% the losses of Brickman.

**B. The Dikla Mondial Mutual Fund Should Not Be Appointed Lead Plaintiff**

**1. Dikla Mondial Has Provided No Evidence of Its Authority To Act As Lead Plaintiff In This Litigation**

Dikla, a mutual fund - and its purported designee Migdal - suffers from serious questions regarding its standing to bring this action. Dikla has submitted no evidence that it acts as attorney-in-fact for its clients and is authorized to bring suit to recover for investment losses. *Weinberg*, 216 F.R.D. 248 (investment advisor must be attorney-in-fact for clients and have unrestricted decision making authority to be "purchaser" under the securities laws). Nor has Dikla demonstrated that it functions as a single investor.

Courts have held that an investment advisor is only a proper Lead Plaintiff where it operates as a "single investor" and functions as the attorney-in-fact for its clients. *See*, *e.g.*, *In re Espeed*, 2005 U.S. Dist. LEXIS 14104 at *5-6 ("In order for an investment advisor to attain standing on behalf of investors, the transactions in question must have been executed as if by a single person. Moreover, the advisor must be the attorney in fact for his clients…"); *See also Weinberg,* 216 F.R.D. 248, 255 ("when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name."); *Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 441 (W.D. Pa. 2001). Further, "[w]hen the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name." *Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D. 101, 107 (E.D.N.Y. 2005); *See also Casden v. HPL Technologies, Inc.*, 2003 U.S. Dist. LEXIS 19606 at *30 (N.D. Cal. Sept. 29, 2003) ("Investment advisors who make the decisions to purchase the securities qualify as purchasers…"). Therefore, as purchasers of the

securities with the proper authority, investment advisors have a financial interest in the relief sought by the Class.

Dikla has presented no such evidence that its clients have anointed it as attorney-in-fact to bring litigation on their behalf. Dikla has presented no evidence concerning its relationship with Migdal and how Migdal would have attorney-in-fact authority for its clients. Dikla is, therefore, not considered the purchaser of Allot stock under the federal securities laws, has no financial interest in this case, and its loss on purchases of Allot stock is zero. Had Dikla wished to be appointed Lead Plaintiff based upon the losses of its clients, it could have timely presented the Court with evidence of its authority.

In *In re Peregrine Sys. Sec. Litig.*, 2002 U.S. Dist. LEXIS 27690 at *58-*59 (S.D. Cal. October 9, 2002), the court was presented with a similar motion to be appointed Lead Plaintiff by the Needham Growth Fund, a mutual fund like Dikla. The court analyzed the fund's standing to be appointed Lead Plaintiff, determining that "the court is unable to discern any reason why the Needham Growth Fund is able to function as "a person" under the PSLRA and finds that it is not an appropriate Lead Plaintiff…" *See also Smith v. Suprema Specialities*, 206 F. Supp. 2d 627, 634-635 (D.N.J. 2002) (denying Lead Plaintiff appointment to an asset manager who failed to show it had the authority to bring action on behalf of its clients). Without the proper attorney-in-fact authority from its clients proving that they intended for Dikla to take legal action on their behalf, Dikla's Lead Plaintiff motion must be denied.

Dikla's Lead Plaintiff motion must also be denied because it is unclear who, as agent for Dikla, had the authority to sign its sworn Certification. The only evidence of any purported agent whatsoever is an unremarkable scribbling of an unknown symbol on the signature line of the Certification, with no elaboration.

Simply, it is obvious that Dikla has done little to provide this Court and the competing movants with any information to establish its standing to be a Lead Plaintiff in this litigation.[1] On this record, the Court must conclude that Dikla does not have the authority to act and therefore does not have standing to seek the position of Lead Plaintiff herein.

### 2. Dikla's Failure To Investigate The Troubling Record Of Its Proposed Lead Counsel Sabo Renders It Inadequate To Be Appointed Lead Plaintiff

Dikla has shown this Court that it will not fairly and adequately protect the interests of the Class through even the most basic of investigations, and should not be appointed Lead Plaintiff. 15 U.S.C. § 77z-1(a)(B)(iii)(II). While the PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval (15 U.S.C. § 77z-1(a)(3)(B)(v)), this Court has both the discretion to undo that choice if necessary to "protect the interests of the class," 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa), or to render Dikla inadequate to represent the Class. *See Weinberg*, 216 F.R.D. 248, 253. The Chen Group submits that Dikla's cavalier attitude towards this litigation and the Class members' rights mandates that this Court eliminate Dikla from consideration as Lead Plaintiff.

Dikla failed to investigate and identify several significant misrepresentations set forth by its chosen counsel Sabo in Sabo's Firm Resume, attached as Exhibit E to the MacDiarmid Declaration submitted to the Court with Dikla's Motion for Lead Plaintiff. Sabo lists three cases in which he purports to serve in a leadership position in federal securities class action litigations, as follows:

---

[1]    Counsel for the Chen Group had numerous telephonic conversations with counsel for Dikla where information was requested to determine Dikla's authority to bring this action, and to determine who its agent was who signed its sworn Certification.  No information was provided in response to these requests.

Jacob Sabo *currently serves* as Co-Lead Counsel or supporting Lead or co-Lead counsels in numerous securities fraud actions throughout the United States, including, among others:

In re Gilat Satellite Networks, Ltd. Sec. Litig.,
USDC Eastern New York, Case. No. 02-1510 CPS

In re Lumenis, Ltd. Sec. Litig.,
USDC Southern New York, Case. No.02-CV-1989 DAB

In re Amdocs Ltd. Sec. Litig.,
USDC Eastern Missouri, Case No. 02CV950 HEA

(Emphasis added.)
Law Offices of Jacob Sabo Firm Resume p1, Miller Suppl. Decl. Exhibit B.

Contrary to Sabo's representations, a cursory search evidences that in fact Sabo currently serves in *no* federally-court appointed leadership positions whatsoever. *See* attachments to Miller Suppl. Decl.: Exhibit C (*In re Amdocs Ltd Sec. Litig.*, Order Approving Stipulation and Appointing Lead Plaintiff and Co-Lead and Liaison Counsel); Exhibit D (*In re Gilat Satellite Networks Sec. Litig.*, Order); Exhibit E (*In re Lumiens, Ltd. Sec. Litig.*, 2003 U.S. Dist. LEXIS 10348). Consequently, Sabo's representation that he currently serves as Co-Lead, among other positions, in securities class action litigations in Federal Court is not true. Had Dikla taken the time to interview and investigate its counsel's representations, or its submissions to this Court, it would have recognized that Sabo held no federally court-appointed leadership positions in securities class actions. In fact, while Sabo was appointed as one of three co-Lead Counsel in *In re Gilat Satellite Networks, Ltd. Sec. Litig.* by virtue of an unopposed Lead Plaintiff motion, his co-Lead Counsel in that case, including Glancy Binkow Goldberg ("Glancy"), proposed co-Lead Counsel for Dikla in this case, substituted Bernstein Liebhard & Lifshitz, LLP in Sabo's place on January 29, 2003, only fifteen days after Sabo was first chosen as co-Lead Counsel. Miller Suppl. Decl. Ex. D.

Dikla should have known about Sabo's misrepresentations in his firm resume. Sabo's proposed co-Lead Counsel for Dikla, Glancy, clearly should have known about Sabo's misrepresentations, having prepared the Order in *In re Gilat Satellite Networks, Ltd. Sec. Litig.* that terminated Sabo's co-lead appointment, nearly four and a half years ago. The only conclusion this Court can make is that Dikla has not diligently managed its chosen counsel, who have exhibited self-interested machinations that epitomize "lawyer-driven" litigation, evidencing that its appointment as Lead Plaintiff would unfairly prejudice the Class. The PSLRA was enacted to expressly prohibit "lawyer-driven litigation". *Weltz*, 199 F.R.D. at 131. Consequently, Dikla cannot be appointed Lead Plaintiff.

### C. The Remaining Lead Plaintiff Movant, Brickman Investments Group, Has Losses Well Below Those Of The Chen Group

Brickman, represented by proposed co-Lead Counsel Lerach Coughlin Stoia Geller Rudman & Robbins LLP and Schiffrin Barroway Topaz & Kessler LLP, is comprised of two shareholders, Brickman Investments, Inc., with a loss of $4,408.00, and John Spitz, with a loss of $7,140.00. The Chen Group's losses are 300% greater than Brickman's. Accordingly, Brickman cannot be appointed Lead Plaintiff as it is not the presumptive lead plaintiff, not having the largest financial losses in the action.

### III) The Court Should Appoint the Chen Group Lead Plaintiff and Approve the Chen Group's Selection of Counsel

The Chen Group suffers none of the defects that render other Movants' Motions unwinnable. The Chen Group, which suffered losses of approximately $42,789.64, has "the largest financial interest in the relief sought by the class" among class members seeking to be appointed Lead Plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(bb) and meets the requirements of Rule 23. The Chen Group is therefore the presumptive Lead Plaintiff in this action, which

presumption cannot be rebutted, and the court should approve the Chen Group's Motion for appointment as Lead Plaintiff.

Further, the PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). The Chen Group has selected Kahn Gauthier Swick, LLC, ("KGS") to serve as Lead Counsel for the Class. KGS is highly experienced in leading the successful prosecution of class action securities cases and currently serves as Lead Counsel in several securities litigations. *See, e.g.*, Miller Decl. at C. This Court may be assured that in the event this Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all the foregoing reasons, the Chen Group respectfully requests that this Court: (1) consolidate all related actions; (2) appoint the Chen Group as Lead Plaintiffs in the Action; (3) approve the Chen Group's selection of Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: July 17, 2007                                      Respectfully submitted,

                                                         KAHN GAUTHIER SWICK, LLC

                                                         /s/ Kim E. Miller_____

                                                         Kim E. Miller (KM-6996)
                                                         Michael A. Swick (MS-9970)
                                                         12 E. 41st Street, 12th Floor
                                                         New York, NY 10017
                                                         Telephone: (212) 696-3730
                                                         Facsimile: (504) 455-1498

KAHN GAUTHIER SWICK, LLC
Lewis S. Kahn
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for the Chen Group and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that this Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on March 2, 2007.

/s/ Kim E. Miller_____