UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BRICKMAN INVESTMENTS INC., On Behalf of Itself and All Others Similarly Situated, | : | Civil Action No. 1:07-cv-03455-RJH |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| vs. | : | |
| ALLOT COMMUNICATIONS LTD., et al., | : | |
| Defendants. | : | |
| GERALD BILGER, Individually and On Behalf of All Others Similarly Situated, | : | Civil Action No. 1:07-cv-03815-RJH |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| vs. | : | |
| ALLOT COMMUNICATIONS LTD., et al., | : | |
| Defendants. | : | |

[Caption continued on following page.]

MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF BRICKMAN
INVESTMENTS INC. AND JOHN SPITZ FOR CONSOLIDATION, APPOINTMENT AS
LEAD PLAINTIFFS AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL AND IN
OPPOSITION TO THE COMPETING MOTIONS

```
                                        x
—————————————————————
ELIYAHU MOKHTAR, Individually and On    :    Civil Action No. 1:07-cv-05456-RJH
Behalf of All Others Similarly Situated, :
                                        :    CLASS ACTION
                                        :
                Plaintiff,              :
                                        :
        vs.                             :
                                        :
ALLOT COMMUNICATIONS LTD., et al.,      :
                                        :
                Defendants.             :
—————————————————————
SHANNON VINSON, Individually and On     :    Civil Action No. 1:07-CV-05457-RJH
Behalf of All Others Similarly Situated, :
                                        :    CLASS ACTION
                Plaintiff,              :
                                        :
        vs.                             :
                                        :
ALLOT COMMUNICATIONS LTD., et al.,      :
                                        :
                Defendants.             :
—————————————————————
                                        x
```

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...................................................................1

II. STATEMENT OF FACTS ......................................................................4

    A.  KGS Issued Materially Misleading Press Releases Concerning This Case Which Were Designed to Enable It to Make a Lead Counsel Motion....................4

    B.  The Chen Group Is Assembled in Response to the KGS Solicitation Press Releases..........................................................................6

    C.  Mr. Chen Also Submitted a Certification to Lerach Coughlin and Has Indicated an Unwillingness to Serve as a Lead Plaintiff .........................................7

    D.  KGS Regularly Files Problematic Lead Plaintiff Motions on Behalf of Inadequate Movants ...................................................................7

III. ARGUMENT .................................................................................8

    A.  The Lead Plaintiff Process ........................................................8

    B.  The Chen Group Should Not Be Appointed Lead Plaintiff....................................9

        1.  Mr. Chen Is Not Adequate to Serve as Lead Plaintiff .................................9

        2.  The Chen Group Is Not Adequate to Serve as Lead Plaintiff Because It Is the Product of an Improper Solicitation .............................10

        3.  Counsel Chosen by the Chen Group Is Not Adequate to Serve as Lead Counsel in This Case and Does Not Satisfy Rule 23(g) ..................12

    C.  Dikla Should Not Be Appointed Lead Plaintiff....................................12

    D.  Brickman and Spitz Are Otherwise Adequate and Typical and Should Be Appointed Lead Plaintiffs .....................................................14

IV. CONCLUSION................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Brickman Investments Inc. v. Allot Communications Ltd., et al.*,
Civil Action No. 1:07-cv-03455-RJH (S.D.N.Y.) ..............................................................4

*Crafton v. Powerwave Techs., Inc.*,
No. SACV-07-0065-PSG(MLGx), (C.D. Cal.) ...................................................................8

*Goldberger v. PXRE Group, Ltd.*,
Case No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925
(S.D.N.Y. March 30, 2007)................................................................................................9

*In re Cable & Wireless, PLC, Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. 2003) .....................................................................................10

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .............................................................................10, 11, 12

*In re Network Assocs. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................................14

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .......................................................................................10

*In re Sonus Networks, Inc. Sec. Litig.*,
229 F.R.D. 339 (D. Mass. 2005).....................................................................................10

*In re Telxon Corp. Sec. Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999).............................................................................11

*In re Versata, Inc.*,
No. C01-1439SI, 2001 U.S. Dist. LEXIS 24270
(N.D. Cal. Aug. 20, 2001)................................................................................................11

*In re Xethanol Corp. Sec. Litig.*,
06-cv-10234-HB (S.D.N.Y.)..............................................................................................8

*In re XM Satellite Radio Holdings Sec. Litig.*,
237 F.R.D. 13 (D.D.C. 2006)............................................................................................8

**Page**

*Mayo v. Apropos Tech., Inc.*,
No. 01 C 8406, 2002 U.S. Dist. LEXIS 1924
(N.D. Ill. Feb. 7, 2002)......................................................................................11

*Sakhrani v. Brightpoint, Inc.*,
78 F. Supp. 2d 845 (S.D. Ind. 1999) .................................................................14

*Schulman v. Lumenis, Ltd.*,
No. 02 Civ. 1989 (DAB), 2003 U.S. Dist. LEXIS 10348
(S.D.N.Y. June 18, 2003)...................................................................................10

*Smith v. Suprema Specialties, Inc.*,
206 F. Supp. 2d 627 (D.N.J. 2002) ...................................................................11

## STATUTES, RULES AND REGULATIONS

15 U.S.C. §78u-4 ....................................................................................... *passim*

Federal Rules of Civil Procedure
Rule 23(g) ................................................................................................ *passim*

New York Code of Professional Conduct........................................................1, 5, 6, 7

Plaintiff Brickman Investments Inc. ("Brickman") and John Spitz ("Spitz") respectfully submit this memorandum of law in further support of their Motion for Consolidation, Appointment as Lead Plaintiffs and for Approval of their Selection of Lead Counsel and in Opposition to the Competing Motions.

## I.    PRELIMINARY STATEMENT

Presently pending before this Court are three Lead Plaintiff motions: (1) Brickman and Spitz; (2) Shichao Chen, Cynthia E. Hober and Robert Jonkheer (the "Chen Group"); and (3) Dikla Mondial Mutual Fund ("Dikla").  Each of the movants seek consolidation of the above-captioned actions, their appointment as Lead Plaintiffs on behalf of purchasers of Allot Communications Ltd. ("Allot" or the "Company") securities and approval of their selection of Lead Counsel.

The Lead Plaintiff process in this case has been disrupted and tainted by lawyer-driven machinations which are antithetical to the policies underlying the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and which, we respectfully submit, should not be countenanced by this Court.  The Chen Group was formed by its lawyers, Kahn Gauthier Swick, LLC ("KGS"), through a materially misleading solicitation campaign.  On May 2, 2007, one day after Plaintiff Brickman issued the first statutorily mandated notice, KGS filed a press release announcing that a "shareholder class action has been filed against Allot Communications" and which directed class members to contact it: "KGS urges you to sign up with the firm. . . ." At the time KGS issued the press release, it did not represent a purchaser of Allot and had not filed a complaint, although the press release did not disclose these material facts.  Again, on May 15, 2007 (announcing "48 Days Remaining . . . to Request Lead Plaintiff Position") and June 30, 2007 (announcing "2 Days Remain..."), KGS issued additional press releases designed to solicit clients so that KGS could make a lead plaintiff application on its behalf.  As detailed herein, all of the press releases issued by KGS were materially misleading in numerous respects and were in violation of the New York Code of

Professional Conduct. *See* DR 2-101[F] (requiring law firm advertisements to be labeled "Attorney Advertising"). Following these improper press releases, KGS filed a motion on behalf of the Chen Group seeking their appointment as Lead Plaintiffs.

The Chen Group's motion raises serious questions about the adequacy of the Chen Group, underscores the danger in permitting such lawyer solicitations in PSLRA cases and should be denied. First, misleading solicitations often result in lead plaintiff motions by movants who: (i) do not understand that they are moving to be lead plaintiff of a securities class action; and (ii) have simply filled out a certification under the mistaken assumption that it is a claim form. *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999) (stating that the published notices were "imperfect" because "recipients could easily have thought that they needed to sign up to participate at all."). Shichao Chen appears to fit this description. As detailed herein and in the accompanying Declaration of Mario Alba, Jr.,[1] Mr. Chen, who recently moved to this country from Beijing, China, executed certifications retaining both Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") and KGS as proposed Lead Counsel. Mr. Chen has advised that he did not understand the roles and responsibilities of a Lead Plaintiff and he did not speak to any member of KGS prior to the filing of the Lead Plaintiff motion on his behalf. As a result of the foregoing, Mr. Chen is not adequate to serve as Lead Plaintiff because he clearly is not interested in pursuing this case and has not demonstrated a willingness to do so. At a minimum, the facts and circumstances surrounding Mr. Chen's entry into this lawsuit will undoubtedly create a side-show that will detract from the prosecution of this action. As will be shown herein, KGS has had other

---

[1]      "Alba Decl." refers to the Declaration of Mario Alba Jr. in Further Support of the Motion of Brickman Investments Inc. and John Spitz for Consolidation, Appointment as Lead Plaintiffs and for Approval of Selection of Lead Counsel and in Opposition to the Competing Motions.

instances in which it filed Lead Plaintiff motions on behalf of movants, like Mr. Chen, who "mistakenly" submitted certifications to multiple law firms.

Second, misleading solicitations lead to the creation of an infirm lead plaintiff group which is detrimental to the interests of the Class. The lead plaintiff provisions of the PSLRA were enacted in order to place securities litigation in the control of determined lead plaintiffs who are to direct lead counsel. Where the lead plaintiff group has been cobbled together by its lawyers in response to a misleading solicitation campaign, as here, the Court cannot have confidence that the lead plaintiffs are in charge of the litigation. How can the Court vest this important securities case in the hands of several individuals who do not know each other, likely did not speak to each other before filing their motion and who responded affirmatively to a misleading solicitation campaign by a law firm that had not even filed a case? Indeed, the Court cannot be assured that it has performed its function to ensure that the interests of the Class are adequately protected. Instead, the appointment of groups, such as the Chen Group, will lead to nuisance value settlements and the compromise of valuable claims because the lead counsel will be concerned that the "lead plaintiffs" will not be able to withstand the scrutiny of class certification proceedings.

Finally, it is respectfully submitted that the Court should reject the Chen Group as inadequate to serve as Lead Plaintiff as a policy matter. The PSLRA lead plaintiff provisions were instituted to benefit the prosecution of meritorious cases by putting them in the control of the plaintiffs. If the Court condones lawyer-driven solicitation campaigns that are designed to "game" the system, it will lead to further perversion of the lead plaintiff provisions. As detailed herein, KGS, and other firms like it, routinely issue a barrage of press releases announcing securities cases in which they did not even file a complaint in an effort to "collect" clients. These releases do not benefit anyone other

than the lawyers issuing them and, in fact, they undermine the *bona fide* efforts by other counsel and plaintiffs to investigate and pursue securities cases.

The motion of Dikla, the movant with the next largest claimed financial interest, should likewise be denied because: (i) Dikla has not submitted a proper certification; (ii) it is unclear who or what Dikla is; (iii) there is no evidence that Dikla is authorized to bring this action; (iv) there is no evidence that Migdal Mutual Funds Management Ltd. ("Migdal"), that purported to sign Dikla's certification, is authorized to move on behalf of Dikla; (v) it is not clear if Dikla, as a foreign investor, understands what its role in this action will be; and (vi) it is not clear if all of Dikla's related mutual funds have disclosed their trades in Allot securities during the Class Period. Moreover, Dikla has requested that an attorney, who is not admitted to practice law in the United States, serve as lead counsel in this action – a most unusual request that raises concerns about its adequacy, especially since the resume submitted by this proposed lead counsel contains inaccurate descriptions of its experience in representing shareholders in securities class actions.

For these reasons, and as set forth herein in more detail, it is respectfully submitted that the motion of Brickman and Spitz should be granted in all respects and that the Court appoint them as Lead Plaintiffs and approve their selection of Lerach Coughlin and Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin Barroway") as Lead Counsel, and deny the competing motions.

## II.    STATEMENT OF FACTS

### A.    KGS Issued Materially Misleading Press Releases Concerning This Case Which Were Designed to Enable It to Make a Lead Counsel Motion

This action was first commenced by Plaintiff Brickman on May 1, 2007. *See* Complaint filed in *Brickman Investments Inc. v. Allot Communications Ltd.*, *et al.*, Civil Action No. 1:07-cv-03455-RJH. In accordance with the notice provision of the PSLRA, that same day, Brickman issued a press release through *Business Wire*, a national, business-oriented newswire service (the "Brickman

- 4 -

Notice"). The Notice advised investors of the pendency of this action, described the action and advised class members of the opportunity for them to seek appointment as lead plaintiff in this action within the next 60 days.

Within hours of the issuance of the Brickman Notice, at 12:33 a.m. on May 2, 2007, KGS issued a press release announcing that a class action had been filed against Allot and urging class members to "sign up with the firm." *See* Exhibit A (hereinafter "KGS First Solicitation Release"). The KGS First Solicitation Release was misleadingly styled to look like a statutorily mandated notice issued under the PSLRA and, in fact, copied many sections of the Brickman Notice verbatim. Importantly, KGS did not represent any Allot investors at the time that it issued this press release, nor had it filed any complaint on behalf of any Allot investors at this time. However, the KGS First Solicitation Release failed to mention any of these material facts. In fact, the KGS First Solicitation Release implied that KGS had filed a suit against Allot when it had not. The release stated in this regard:

> SPECIAL NOTICE: **Multiple law firms often file the same class action.** However, courts will generally appoint only one of these firms to prosecute a securities fraud action on behalf of the shareholders based upon the amount of losses its "lead plaintiffs" have suffered. Accordingly, **while KGS urges you to sign up with the firm**, KGS also encourages you to carefully evaluate any other firm that may be competing with KGS to prosecute the Allot class action, should you be considering another firm. Critical components of a law firm's ability to successfully prosecute this action and obtain a strong recovery for you include the resources it will dedicate to prosecution of the case, including the number of lawyers the firm has available for the Allot action in particular, AND especially the quality of the firm's work. Interested shareholders are encouraged to call for consultation and to request more information about KGS. [Emphasis added.]

Although the KGS First Solicitation Release was clearly an advertisement by KGS, the release was not labeled as such and was in violation of the New York Code of Professional Conduct. *See* DR 2-101[F] (requiring law firm advertisements to be labeled "Attorney Advertising").

Despite that it still did not represent any party in the pending actions (or perhaps in spite of that), on May 15, 2007, KGS issued another press release with the headline: "INVESTOR ALERT: 48 Days Remaining For Allot Communications Ltd. Investors to Request Lead Plaintiff Position In Shareholder Class Action Lawsuit." *See* Exhibit B (hereinafter referred to as "KGS Second Solicitation Release"). The KGS Second Solicitation Release was virtually identical to the KGS First Solicitation Release except that it advised class members how many days it had been since the case was filed by Plaintiff Brickman. Although the KGS Second Solicitation Release was clearly an advertisement by KGS, the release was not labeled as such and was in violation of the New York Code of Professional Conduct.

Then, on June 30, 2007, KGS issued yet another press release, this time with the headline: "INVESTOR ALERT: Only 2 Days Remain for Allot Communications Ltd. Investors to Request Lead Plaintiff Position in Shareholder Class Action Lawsuit." *See* Exhibit C (the "KGS Third Solicitation Release"). This time, KGS made an additional effort to recruit Plaintiffs for its Lead Plaintiff Group. The KGS Third Solicitation Release stated, in pertinent part, as follows:

> IF YOU PURCHASED SHARES OF ALLOT SUBSEQUENT TO THE IPO AND LOST MONEY ON YOUR TRANSACTIONS, KGS LAWYERS ARE AVAILABLE OVER THE WEEKEND TO DISCUSS YOUR LEGAL RIGHTS. YOU MAY IMMEDIATELY REACH LEWIS KAHN, KGS MANAGING PARTNER, VIA CELL 504.301.7900 OR VIA EMAIL LEWIS.KAHN@ KGSCOUNSEL.COM, OR YOU MAY VISIT http://www.kgscounsel.com/case/ case.asp?lngCaseId=4995 FOR MORE INFORMATION.

Although the KGS Third Solicitation Release was clearly an advertisement by KGS, the release was not labeled as such and was in violation of the New York Code of Professional Conduct.

**B.    The Chen Group Is Assembled in Response to the KGS Solicitation
       Press Releases**

The KGS Solicitation Press Releases served their intended purpose. On May 3, 2007, after the issuance of the KGS First Solicitation Release, Cynthia E. Hober, a member of the Chen Group,

signed a certification. On June 2, 2007, Mr. Chen purportedly filled out a certification form seeking to retain the KGS law firm. Then, on July 2, 2007, Robert Jonkheer, the third member of the Chen Group, signed a certification for KGS.

**C.    Mr. Chen Also Submitted a Certification to Lerach Coughlin and Has Indicated an Unwillingness to Serve as a Lead Plaintiff**

On May 9, 2007, Shichao Chen, also a member of the Chen Group and who recently moved here from Beijing, China, completed a certification form on the Lerach Coughlin website, *see* Exhibit D, seeking to retain the Lerach Coughlin firm in this action. From the period of May 9, 2007 to July 2, 2007, Mario Alba, Jr., an attorney from Lerach Coughlin, made several unsuccessful attempts to contact Mr. Chen through phone calls and e-mail.[2]  *See* Alba Decl. at ¶4.

Subsequent to the filing of the motions for lead plaintiff in this litigation, Mr. Chen contacted Lerach Coughlin in response to an earlier message from Mr. Alba. *See* Alba Decl. at ¶¶5-6. During that conversation, Mr. Chen advised that, despite his signing of the certification on the Lerach Coughlin website, he was not prepared to commit time to serving as a lead plaintiff in this action and did not wish to serve as a lead plaintiff. He also disclosed that he had filled out a similar certification form with the KGS law firm, but that he had not spoken to anyone from that firm concerning this action. *Id*.

**D.    KGS Regularly Files Problematic Lead Plaintiff Motions on Behalf of Inadequate Movants**

KGS's misleading solicitation tactics have led it to file other problematic lead plaintiff applications. As is the case here with Mr. Chen, these problems stem, in part, from KGS's failure to

---

[2]    It should be noted that the Lerach Coughlin firm did not file a motion for lead plaintiff by Mr. Chen because his commitment to this litigation could not be confirmed prior to the statutory deadline for filing any motion on his behalf.

speak with investors who complete certifications before filing motions on their behalf and to make a basic inquiry as to whether these investors are able to adequately represent the interests of the class.

For example, in two recent and unrelated cases, KGS filed motions seeking the appointment of investors as lead plaintiff and approval of the KGS firm as lead counsel. At the same time that KGS filed those motions, other firms filed competing motions seeking the same relief for the same plaintiff, but proposing a different law firm as lead counsel. *See Crafton v. Powerwave Techs., Inc.*, No. SACV-07-0065-PSG(MLGx), (C.D. Cal.) (KGS and another firm both filed competing motions on behalf of Farokh Etemadieh); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, (D.D.C. 2006) (KGS and another firm both filed competing motions on behalf of Victor Ventimiglia) (relevant pages attached as Exhibit E). Not surprisingly, those investors were not appointed as lead plaintiffs.

Similarly, in *In re Xethanol Corp. Sec. Litig.*, 06-cv-10234-HB (S.D.N.Y.), KGS proposed an investor as lead plaintiff who had been twice indicted and convicted for his role as a principal in two separate savings and loan scandals as well as an assault on an Internal Revenue Service agent. As KGS ultimately conceded in this case, it had not made the appropriate inquiry of this plaintiff prior to filing the motion for lead plaintiff on his behalf. *See* Exhibit F.

## III.    ARGUMENT

### A.    The Lead Plaintiff Process

Section 21D of the PSLRA provides that in securities class actions, "courts shall appoint as Lead Plaintiff(s) the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. §78u-4(a)(3)(B)(i). In determining which class member is "the most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) *otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure*.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (emphasis added).

Pursuant to the PSLRA, once a court finds that a movant has the largest financial interest in the litigation, the court affords that movant a rebuttable presumption as most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *Goldberger v. PXRE Group, Ltd.*, Case No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925 (S.D.N.Y. March 30, 2007). Once the rebuttable presumption described in the PSLRA is established, it may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff: (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## B.    The Chen Group Should Not Be Appointed Lead Plaintiff

### 1.    Mr. Chen Is Not Adequate to Serve as Lead Plaintiff

Mr. Chen is not adequate to serve as a Lead Plaintiff in this case because he has advised that he did not speak to anyone at KGS before its Lead Plaintiff motion was made on his behalf and he is not interested in assuming the role and responsibilities of a Lead Plaintiff. *See* Alba Decl. at ¶¶5-6. Under these circumstances, Mr. Chen does not otherwise satisfy Rule 23 and his motion should be denied. Moreover, any effort now by KGS to belatedly remedy its apparent failure to consult with Mr. Chen prior to the making of the Lead Plaintiff motion on his behalf should be rejected by the Court as untimely.

### 2.    The Chen Group Is Not Adequate to Serve as Lead Plaintiff Because It Is the Product of an Improper Solicitation

Congress expressly provided that before appointing a lead plaintiff, district courts must make a finding that the lead plaintiff movant "satisfies the requirements of Rule 23." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) ("The PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation."); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003) ("[A] movant's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class."). The Rule 23 adequacy requirement is designed to ensure that the lead plaintiff and its choice of representation will adequately protect all absent class members. Indeed, lead plaintiffs have a fiduciary duty to monitor, manage and control the litigation with the advice of, but not the direction of class counsel.

Here, the motion of the Chen Group is nothing more than the product of lawyer-driven machinations designed to secure a lead counsel position for their counsel. Even if the Chen Group was entitled to the presumption that they are the most adequate plaintiff (which they are not), that presumption can be rebutted upon a showing that the movants are either inadequate or atypical to serve as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). To be sure, lead plaintiff movants that permit their lawyers to engage in such tactics are not adequate to serve as lead plaintiff and do not otherwise satisfy Rule 23 and their counsel are not adequate to serve as class counsel. S*ee In re Cavanaugh*, 306 F.3d 726, 737 (9th Cir. 2002); *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 U.S. Dist. LEXIS 10348, at *23 (S.D.N.Y. June 18, 2003) ("Courts, however, may decline to approve Lead Plaintiff's suggested counsel 'to protect the interests of the class.'"); *In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 347 (D. Mass. 2005) ("It is also in the interest of the

administration of justice to give integrity to the PSLRA's mandate that litigants not lawyers direct and control class action litigation."); *In re Versata, Inc.*, No. C01-1439SI, 2001 U.S. Dist. LEXIS 24270, at *21 (N.D. Cal. Aug. 20, 2001) (Courts should focus on "whether the asserted group has ***demonstrated the ability to represent the class and direct the litigation without undue influence from counsel***."). [Emphasis added.]

Moreover, when attorneys use misleading press releases – masquerading as "notices" – based on other firm's work-product to solicit clients, the PSLRA's primary purpose of replacing lawyer-driven litigation with client-driven litigation is subverted. Accordingly, when a lead plaintiff proposes as lead counsel attorneys who have not previously filed their own complaints, courts have declined to approve their selection without an additional showing of their adequacy.[3] *See* generally *Mayo v. Apropos Tech., Inc.*, No. 01 C 8406, 2002 U.S. Dist. LEXIS 1924 (N.D. Ill. Feb. 7, 2002).

These lawyer-driven machinations and solicitations are contrary to the policies and purpose of the PSLRA and it is respectfully submitted that they should be rejected by this Court. To endorse these efforts would be to encourage its conduct and would be contrary to Congress' intent to prevent lawyer-driven litigation. *See Cavanaugh*, 306 F.3d at 737; *see also Mayo*, 2002 U.S. Dist. LEXIS 1924, at *17-*18 (after stating that it was "uncertain" about counsel's "experience in the current matter," court required counsel to provide evidence of "past efforts in th[e] matter as well as the

---

[3]     Under the PSLRA the most adequate plaintiff is to select and retain counsel subject, of course, to the court's approval. 15 U.S.C. §78u-4(a)(3)(B)(v). A lead plaintiff movant cannot be approved "if the Court concludes that that plaintiff, or plaintiffs, and his, her, their, or its counsel, will not 'fairly and adequately protect the interests of the class.'" *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 816-17 (N.D. Ohio 1999); *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 633 (D.N.J. 2002) (the Rule 23 requirement of "fairly and adequately" representing the class is satisfied only when both the class representative and its attorneys are capable of satisfying their obligations). In proposing KGS as lead counsel, the Chen Group has chosen as its counsel a firm which has never been appointed as sole lead counsel in any significant securities class action.

ability to carry forward such efforts on behalf of any potential class"). Accordingly, the Chen Group should not be appointed Lead Plaintiff in this litigation. To do so would violate one of the central goals of the PSLRA. *See Cavanaugh*, 306 F.3d at 737.

### 3. Counsel Chosen by the Chen Group Is Not Adequate to Serve as Lead Counsel in This Case and Does Not Satisfy Rule 23(g)

As previously stated, the Chen Group's proposal of the KGS law firm as Lead Counsel also raises questions as to their adequacy. When considering the appointment of class counsel, Fed. R. Civ. P. 23(g)(1)(C)(i) directs the Court to consider, among other things, "work counsel has done in identifying or investigating potential claims in the action." Here, the only "work" that the KGS firm has done in this action is issue misleading press releases seeking to solicit clients and prepared a form Lead Plaintiff motion on behalf of class members who have never spoken to one another and who responded to a materially misleading solicitation campaign. This "work" does not qualify them to serve as Lead Counsel in this case and they should not be rewarded for employing the tactics detailed herein.

### C. Dikla Should Not Be Appointed Lead Plaintiff

The motion of Dikla should also be denied for several reasons. In making its motion, Dikla has provided no information that evidences the authority of Migdal to seek appointment in this litigation on behalf of Dikla. Moreover, no details of the relationship between Dikla and Migdal have been disclosed. A review of Migdal Insurance & Financial Holdings' website (www.migdal.co.il) also indicates that Dikla is one of many Israeli mutual funds managed by Migdal Mutual Funds, Ltd., although no disclosure has been made about other funds that Migdal manages that might have benefited from the alleged misconduct at Allot and possibly realized a profit on their trading in Allot shares. *See* 15 U.S.C. §78u-4(a)(2)(A)(iv) (requiring that a plaintiff set forth "all" of its transactions in the subject security).

- 12 -

Dikla's motion should further be denied because the certification that has been submitted on its behalf contains a one letter scribble in the place of a signature and thus is not signed in accordance with the PSLRA.  *See* 15 U.S.C. §78u-4(a)(2)(A) (stating that the certification submitted must be "personally signed by such plaintiff").  Moreover, there is no indication of whose scribble is on the certification or if such person is authorized to act on behalf of the fund in seeking appointment as a Lead Plaintiff.  In addition to the scribble, there is also a stamp with the Hebrew inscription of what appears to be "Migdal Mutual Funds, Ltd."  This stamp only adds to the confusion since it is not the stamp of Dikla, the investor that is seeking to be appointed as Lead Plaintiff here.

Lastly, Dikla's choice of proposed Lead Counsel raises concerns about whether it is adequate to represent the interests of the entire class.  By proposing an Israeli law firm – The Law Offices of Jacob Sabo (the "Sabo Firm") – as Lead Counsel, a firm that does not employ any lawyers admitted to practice law in the United States, Dikla's motivations here are legitimately questioned.  Moreover, Dikla offers no explanation as to why this Court should appoint foreign counsel to represent a class of investors in a United States court.

Dikla's proposed Lead Counsel, the Sabo Firm, has also misrepresented its credentials to serve as Lead Counsel in this case.  Despite claiming that it is currently serving as "co-Lead Counsel" in securities fraud actions in the United States, a review of the dockets in the cases cited by the Sabo Firm in its resumé evidence that it not currently serving as co-Lead Counsel in any securities fraud actions in the United States.  Accordingly, Dikla's choice of counsel is further proof of its inadequacy to serve as Lead Plaintiff.[4]

---

[4]   Because Dikla's application raises more questions than answers, at a minimum, this Court should permit Brickman and Spitz to conduct discovery into the adequacy of Dikla.  *See* 15 U.S.C.

### D.    Brickman and Spitz Are Otherwise Adequate and Typical and Should Be Appointed Lead Plaintiffs

Brickman and Spitz satisfy the typicality and adequacy requirements of Rule 23. The claims of Brickman and Spitz are typical of the claims of the rest of the class because, just like all other class members, they: (1) purchased Allot shares during the Class Period; (2) purchased Allot shares in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (3) suffered damages thereby. Thus, Brickman and Spitz's claims are typical of those of other class members since their claim and the claims of other class members arise out of the same course of events.

Brickman and Spitz are also adequate representatives of all members of the class. As evidenced by the injuries suffered by Brickman and Spitz, who purchased Allot shares at prices allegedly artificially inflated by Defendants' materially false and misleading statements, the interests of Brickman and Spitz are clearly aligned with the interests of all the members of the class, and there is no evidence of any antagonism between Brickman and Spitz's interests and those of the other members of the class. Further, Brickman and Spitz have taken significant steps which demonstrate that they will protect the interests of the class: they have retained highly qualified and experienced counsel to prosecute these claims. Thus, Brickman and Spitz *prima facie* satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

Accordingly, Brickman and Spitz should be appointed Lead Plaintiffs and their selection of counsel should be approved.

---

§78u-4(a)(3)(B)(iv); *see also In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999) (permitting discovery of proposed foreign lead plaintiffs); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 854-55 (S.D. Ind. 1999) (ordering discovery to test movant's adequacy to serve as lead plaintiff).

## IV.     CONCLUSION

For all the foregoing reasons, Brickman and Spitz respectfully request that the Court: (i) appoint them as Lead Plaintiffs in the Actions; (ii) approve their selection of Lead Counsel as set forth herein; (iii) deny the competing motions to the extent they seek appointment of the respective movants as Lead Plaintiffs and/or their counsel as Lead Counsel; and (iv) grant such other such relief as the Court may deem just and proper.

DATED:  July 20, 2007               LERACH COUGHLIN STOIA GELLER
                                        RUDMAN & ROBBINS LLP


                                    _____
                                          /s/ *Samuel H. Rudman*
                                        SAMUEL H. RUDMAN

                                    SAMUEL H. RUDMAN (SR-7957)
                                    DAVID A. ROSENFELD (DR-7564)
                                    MARIO ALBA, JR. (MA-7240)
                                    58 South Service Road, Suite 200
                                    Melville, NY  11747
                                    Telephone:  631/367-7100
                                    631/367-1173 (fax)

                                    SCHIFFRIN BARROWAY TOPAZ
                                      & KESSLER, LLP
                                    SEAN M. HANDLER
                                    280 King of Prussia Road
                                    Radnor, PA  19087
                                    Telephone:  610/667-7706
                                    610/667-7056 (fax)

                                    *[Proposed] Co-Lead Counsel for Plaintiffs*

ALLOT COMMUNICATIONS
Service List - 7/20/2007    (07-0093)
Page 1 of  2

### Counsel For Defendant(s)

Vincent R. Fitzpatrick, Jr.
Douglas P. Baumstein
White & Case LLP
1155 Avenue of the Americas
New York, NY  10036-2787
  212/819-8200
  212/354-8113 (Fax)

Gideon A. Schor
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY  10019
  212/999-5800
  212/999-5899 (Fax)

### Counsel For Plaintiff(s)

Jack G. Fruchter
Abraham, Fruchter & Twersky
One Pennsylvania Plaza, Suite 2805
New York, NY  10119
  212/279-5050
  212/279-3655 (Fax)

Evan J. Smith
Brodsky & Smith, LLC
240 Mineola Blvd., 1st Floor
Mineola, NY  11501
  516/741-4977
  516/741-0626 (Fax)

Nadeem  Faruqi
Shane T. Rowley
Antonio  Vozzolo
Faruqi & Faruqi, LLP
369 Lexington Avenue, 10th Floor
New York, NY  10017-6531
  212/983-9330
  212/983-9331 (Fax)

Lionel Z. Glancy
Michael  Goldberg
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
  310/201-9150
  310/201-9160 (Fax)

Corey D. Holzer
Michael I. Fistel, Jr.
Holzer Holzer & Fistel, LLC
1117 Perimeter Center West, Suite E-107
Atlanta, GA  30338
  770/392-0090
  770/392-0029 (Fax)

Michael A. Swick
Kim E. Miller
Kahn Gauthier Swick, LLC
12 East 41st Street, 12th Floor
New York, NY  10017
  212/696-3730
  504/455-1498 (Fax)

ALLOT COMMUNICATIONS

Service List - 7/20/2007    (07-0093)

Page 2 of  2

Jacob  Sabo
Law Offices of Jacob Sabo
The Tower No. 3
Daniel Frisch Street, 15th Floor
Tel-Aviv, Israel,   64731

Samuel H. Rudman
David A. Rosenfeld
Mario  Alba, Jr.
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
   631/367-7100
   631/367-1173 (Fax)

Brian P. Murray
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, NY  10016
   212/682-1818
   212/682-1892 (Fax)

Richard A. Maniskas
D. Seamus Kaskela
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA  19087
   610/667-7706
   610/667-7056 (Fax)

 **Courtesy Copy**

Lewis S. Kahn
Kahn Gauthier Swick, LLC
650 Poydras Street, Suite 2150
New Orleans, LA  70130
   504/455-1400
   504/455-1498 (Fax)