## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRICKMAN INVESTMENTS INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLOT COMMUNICATIONS LTD., YIGAL JACOBY, RAMI HADAR and ADI SAPIR,<br><br>Defendants. | No. 1:07-cv-03455-RJH<br><br>**DECLARATION OF JACOB SABO IN FURTHER SUPPORT OF THE MOTION OF DIKLA MONDIAL MUTUAL FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL** |
| GERALD BILGER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLOT COMMUNICATIONS LTD., YIGAL JACOBY, RAMI HADAR and ADI SAPIR,<br><br>Defendants. | No. 1:07-cv-03815-RJH |
| ELIYAHU MOKHTAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLOT COMMUNICATIONS LTD., YIGAL JACOBY, RAMI HADAR and ADI SAPIR,<br><br>Defendants. | No. 1:07-cv-05456-RJH |

*[Captions Continue on Following Page]*

SHANNON VINSON, individually and on
behalf of all others similarly situated,

                Plaintiff,

       v.

ALLOT COMMUNICATIONS LTD.,
YIGAL JACOBY, RAMI HADAR and ADI
SAPIR,

                Defendants.

No. 1:07-cv-05457-RJH

Jacob Sabo, for his declaration pursuant to 28 U.S.C. § 1746, states as follows:

1.      I am licensed to practice law in Israel and am also a member in good standing of the Bar of the State of New York. I declare that a have personal knowledge of the following and, if called upon to do so, would testify truthfully thereto.

2.      I submit this declaration in support of the motion of Dikla Mondial Mutual Fund ("Dikla Mondial") for appointment as Lead Plaintiff herein.

3.      Contrary to the erroneous assertions in the opposition brief filed by the so-called "Chen Group," Dikla Mondial is not an "investment advisor" who gives advice to individual clients who hold title to Allot shares. Rather, Dikla Mondial, is a mutual fund managed by Migdal Mutual Funds Mgt. Ltd. ("Migdal"), Dikla Mondial's authorized agent for purchase and sale of stock. Migdal manages 96 mutual funds, of which Dikla Mondial is one. Under Israeli law, the mutual fund, *e.g.*, Dikla Mondial, and not the individual investors (in Dikla Mondial), owns the shares, *e.g.* Allot. Only the mutual fund, *e.g.,* Dikla Mondial, and not the investors in that fund, has the right to prosecute this action against defendants. Dikla Mondial has no employees of its own and acts through its manager Migdal, who is also its agent.

4.      Migdal's Chief Executive Officer, Mr. Asa Sasson, executed the sworn certification filed with the moving papers on behalf of Migdal.

5.      The so-called "Chen Group" also misinformed the Court concerning my resume and my credentials to serve as Co-Lead Counsel herein. While I currently serve as Co-Lead Counsel in a securities fraud action here in the United States, *In re Team Telecom Int'l. Ltd.*, No. 2:04-cv-04305-PGS (U.S.D.C. for the District of New Jersey) (a copy of the Court's Order appointing my office as Co-Lead Counsel is attached as Exhibit A hereto), my resume did not state that I was currently serving as appointed "Co-Lead Counsel" in the listed cases. Rather, it

3

states, in the alternative, that I serve in a capacity of "supporting Lead or co-Lead counsels" in those cases. For example, in the *Gilat* action, the Notice of the proposed settlement of the action sent to class members specifically references my office as counsel for plaintiffs who can assist claimants in Israel with questions concerning the action and the notice of the proposed $20 million settlement. *See* Exhibit B at 2, ¶9.

6.      Although it trades on a United States securities market, Allot is an Israeli company with its corporate headquarters in Israel. I believe the interests of the putative class would be well served by having Dikla Mondial, an Israeli entity, serve as the Lead Plaintiff. Dikla Mondial and Migdal are well acquainted with the manner in which business is conducted in Israel. As much of the discovery will likely be conducted in Israel, with many documents written in Hebrew, the putative class will benefit from having both an Israeli Lead Plaintiff and co-lead counsel who is an experienced Israeli business lawyer (also admitted in New York).

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 19th day of July, 2007, at New York, New York

_____
Jacob Sabo

4

# EXHIBIT A



UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAN ISRAELI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff.<br><br>    v.<br><br>TEAM TELECOM INTERNATIONAL LTD., ET AL., TEAM SOFTWARE INDUSTRIES LTD., MEIR LIPSHES, SHLOMO EISENBERG, and ISRAEL OFER,<br><br>        Defendants. | No. 2:04-cv-04305-JAG-DMC |

## [PROPOSED] ORDER GRANTING MOTION OF LEUMI GEMEL LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL

Having considered the motion of Leumi Gemel Ltd. For Appointmet As Lead Plaintiff And For Approval Of Lead Plaintiff's Selection Of Co-Lead Counsel, the Memorandum of Law in support thereof, the Declaration of Olimpio Lee Squitieri in Support of that Motion and having heard argument in opposition thereof,

**IT IS HEREBY ORDERED:**

1)     The Motion of Leumi Gemel Ltd. is granted;

2)     This Order (the "Order") shall apply to the above-captioned action (the "Action") and to each case that relates to the same subject matter that is subsequently filed in this Court or is transferred to this Court and subsequently consolidated with the Action;

3)     Movant Leumi Gemel Ltd. is appointed to serve as Lead Plaintiff in the above-captioned action and any subsequently consolidated actions, pursuant to 15 U.S.C. §78u-

- 1 -

4(a)(3)(B).

    4)       The law firm of Glancy Binkow & Goldberg LLP and the Law Offices of Jacob

Sabo are hereby approved as Co-Lead Counsel for the Class. Lead Counsel shall provide general

supervision of the activities of plaintiff's counsel and shall have the following responsibilities

and duties to perform or delegate as appropriate:

          a)      to brief and argue motions;

          b)      to initiate and conduct discovery, including, without limitation,

coordination of discovery with defendants' counsel, preparation of written interrogatories,

requests for admission and requests for production of documents;

          c)      to direct and coordinate the examination of witnesses in depositions;

          d)      to act as spokesperson at pretrial conferences;

          e)      to call and chair meetings of plaintiff's counsel as appropriate or necessary

from time to time;

          f)      to initiate and conduct any settlement negotiations with counsel for

defendants;

          g)      to provide general coordination of the activities of plaintiff's counsel and

to delegate work responsibilities to selected counsel as may be required in such a manner as to

lead to the orderly and efficient prosecution of this litigation and to avoid duplication or

unproductive effort;

          h)      to consult and employ experts;

          i)      to receive and review periodic time reports of all attorneys on behalf of

plaintiffs, to determine if the time is being spent appropriately and for the benefit of plaintiffs and

to determine and distribute plaintiff's attorneys' fees; and

      j)     to perform such other duties as may be expressly authorized by further order of this Court.

      5)     The law firm of Squitieri & Fearon, LLP is appointed to serve as Liaison Counsel. Plaintiffs' Liaison Counsel shall be responsible for coordinating all appearances on behalf of plaintiffs and for the dissemination of notices and orders of this Court. Plaintiffs' Liaison Counsel shall also be available and responsible for communications to and from this Court, including distributing orders and other directions from the Court to counsel. Plaintiffs' Liaison Counsel shall be responsible for creating and maintaining a master service list of all parties and their respective counsel.

      6)     Lead Counsel shall file a motion to consolidate all actions that relate to the same subject matter of the present action within 45 days of the entry of this Order.

Dated: __12/12__ , 2004

                        The Honorable Donald G. Haneke
                        United States Magistrate Judge

Submitted by:

**SQUITIERI & FEARON, LLP**
Olimpio Lee Squitieri
Daniel R. Lapinski
13 James Street
Morristown, New Jersey 07960
Telephone:    (973) 267-4488
Facsimile:    (973) 267-4248

*Proposed Liaison Counsel*

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Avi Wagner
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:     (310) 201-9150
Facsimile:     (310) 201-9160

**GLANCY BINKOW & GOLDBERG LLP**
Robin Howald
1501 Broadway, Suite 1900
New York, New York 10036
Telephone:     (917) 510-0009
Facsimile:     (646) 366-0895

*Proposed Co-Lead Counsel*

**LAW OFFICES OF JACOB SABO**
Jacob Sabo
The Tower No. 3 Daniel Frisch Street
15th Floor
Tel Aviv, Israel 64731
Telephone:     011 972 3 607 88 88
Facsimile:     011 972 3 607 88 89

*Proposed Co-Lead Counsel*

- 4 -

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

IN RE GILAT SATELLITE NETWORKS LTD.           CIVIL ACTION NO.
                                              CV-02-1510(CPS-SMG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION,
HEARING ON PROPOSED SETTLEMENT AND ATTORNEYS' FEE PETITION
AND RIGHT TO SHARE IN SETTLEMENT FUND**

TO:    ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED GILAT SATELLITE NETWORKS LTD. COMMON STOCK DURING THE PERIOD FEBRUARY 10, 2000 THROUGH MAY 31, 2002, INCLUSIVE (THE "CLASS PERIOD").

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY PROCEEDINGS IN THIS ACTION.

CLAIMS DEADLINE: CLAIMANTS MUST SUBMIT PROOFS OF CLAIM AND RELEASE, ON THE FORM ACCOMPANYING THIS NOTICE, **POSTMARKED ON OR BEFORE SEPTEMBER 3, 2007.**

EXCLUSION DEADLINE:  REQUESTS FOR EXCLUSION MUST BE SUBMITTED **POSTMARKED NO LATER THAN JUNE 29, 2007.**

SECURITIES BROKERS AND OTHER NOMINEES:  PLEASE SEE INSTRUCTIONS BELOW IN ¶ 56.

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

**SUMMARY OF PROPOSED SETTLEMENT AND RELATED MATTERS**

A.    **Purpose of this Notice**

1.      This Notice is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order dated April 19, 2007 of the United States District Court for the Eastern District of New York (the "Court").  The purpose of this Notice is to inform you of the proposed Settlement of this Class Action (the "Action"), of the terms of the proposed Settlement, which will affect all Class Members' rights, and of a hearing to be held by the Court to consider the fairness, reasonableness and adequacy of a proposed Settlement in the amount of $20 million.  This Notice describes rights you may have under the proposed Settlement and what steps you may now take in relation to the Action.  This Settlement Notice is not an expression of any opinion by the Court as to the merits of any claims or any defenses asserted by any party in the Action, or the fairness or adequacy of the proposed Settlement.  Your legal rights are affected by this Settlement whether you act or not.  Please read this Notice carefully.

B.    **Statement of Plaintiffs' Recovery**

2.      Pursuant to the proposed Settlement described herein, a Settlement Fund consisting of twenty million dollars ($20,000,000) in cash, plus interest (the "Gross Settlement Fund"), has been established.

3.      Plaintiffs estimate that approximately 121.5 million shares of Gilat Satellite Networks Ltd. ("Gilat") common stock were purchased or otherwise acquired[1] during the Class Period, which may have been damaged as a result of the alleged wrongdoing described below.  The parties do not agree on the average amount of damages per share that would be recoverable if Plaintiffs prevailed on all claims.  The likely average recovery per damaged share of Gilat common stock under the proposed Settlement will substantially depend on the number of claims filed.  If claims representing all Class Period acquisitions are filed, the average recovery per share will be $ .16 per share before deduction of Court awarded attorneys' fees and expenses; however, Class Members' actual recoveries per share may be substantially higher or lower, because the recovery for any particular stock purchase will vary depending on, among other factors, when during the Class Period the purchase occurred and the losses recognized under the Plan of Allocation for such purchases.

---

[1] Common stock (and other securities) may be acquired by means other than purchase on the open market.  Examples of other methods of acquisition include acquiring stock by exercising warrants or stock options, or acquiring stock through an employer stock distribution.  The Class is defined to include class members who acquired Gilat common stock through such means other than open market purchases.

4.      Under the relevant securities laws, a claimant's recoverable damages are limited to the losses attributable to the alleged securities law violations. Losses which resulted from factors other than alleged securities law violations are not recoverable from the Settlement Fund. For purposes of the proposed Settlement herein, a Class Member's distribution from the Net Settlement Fund will be governed by the proposed Plan of Allocation described below at ¶¶ 36-43, or such other Plan of Allocation as may be approved by the Court.

C.      **Statement of Potential Outcome of Case**

5.      The parties disagree on both liability and damages and do not agree on the average amount of damages per security that would be recoverable if Plaintiffs were to have prevailed on each claim alleged. The issues on which the parties disagree include: (a) the appropriate economic model for determining the amount by which any Gilat securities were allegedly artificially inflated (if at all) during the relevant time period; (b) the amount by which any Gilat securities were allegedly artificially inflated (if at all) during the relevant time period; (c) the effect of various market forces influencing the trading prices of the Gilat securities at various times during the relevant time period; (d) the extent to which external factors, such as general market and industry conditions, influenced the trading prices of the Gilat securities at various times during the relevant time period; (e) the extent to which the various matters that Plaintiffs alleged were materially false or misleading influenced (if at all) the trading prices of the Gilat securities at various times during the relevant time period; (f) the extent to which the various allegedly adverse material facts that Plaintiffs alleged were omitted influenced (if at all) the trading prices of Gilat securities at various times during the relevant time period; and (g) whether the statements made or facts allegedly omitted were false, misleading, material or otherwise actionable under the federal securities laws.

6.      Plaintiffs' Counsel recognizes that there are substantial obstacles that Plaintiffs and the Class would have had to overcome to prevail on their liability claims and that there were risks to establishing damages, including risks that the decline in the prices of Gilat could be attributed, in whole or in part, to other, non-actionable, factors. Therefore, Plaintiffs could have recovered nothing or substantially less than the amount of the Settlement.

7.      Defendants Gilat, Yoel Gat, and Yoav Leibovitch deny that they made any false or misleading statements, deny that they are liable to the Plaintiffs or the Class and deny that Plaintiffs or the Class have suffered any damages.

D.      **Statement of Attorneys' Fees and Costs Sought**

8.      Plaintiffs' Counsel intends to apply for fees of 30% of the Gross Settlement Fund, and for reimbursement of expenses incurred in connection with the prosecution of this Action of approximately $600,000 (exclusive of ongoing costs in conjunction with the administration of the Settlement). The requested fees and expenses would amount to an average of $ .05 per damaged share of Gilat common stock purchased or acquired during the Class Period. Plaintiffs' Counsel has expended considerable time and effort in the prosecution of this litigation on a contingent fee basis, and has advanced the expenses of the litigation, in the expectation that if they were successful in obtaining a recovery for the Class they would be paid from such recovery. In this type of litigation it is customary for counsel to be awarded a percentage of the common fund recovery as their attorneys' fees.

E.      **Further Information**

9.      Further information regarding the Action and this Settlement Notice may be obtained by contacting Plaintiffs' Co-Lead Counsel: Steven J. Toll, Esq. or Daniel S. Sommers, Esq., Cohen, Milstein, Hausfeld & Toll, P.L.L.C., 1100 New York Avenue, N.W., West Tower, Suite 500, Washington, D.C. 20005, Telephone (202) 408-4600; Jeffrey M. Haber, Esq., Bernstein Liebhard & Lifshitz, LLP, 10 East 40th Street, New York, NY 10016, Telephone (212) 779-1414; Lionel Z. Glancy, Esq. or Marc L. Godino, Glancy Binkow & Goldberg LLP, 1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, Telephone: (310) 201-9150, or, for Class Members who reside in Israel, you may contact Jacob Sabo, Law Office of Jacob Sabo, The Tower - 15th floor, #3 Daniel Frisch St., Tel-Aviv, Israel, Telephone: (972)(03) 736-2359, Facsimile: (972) 36078889; email: sabolaw@inter.net.il. You may also contact In re Gilat Satellite Networks Ltd., c/o The Garden City Group, Inc., Claims Administrator, P. O. Box 9090, Dublin, OH 43017-0990, U.S.A., Telephone 1(800) 256-5848 in the United States or 014 800 747 27472 in Israel www.gardencitygroup.com/cases/.

F.      **Reasons for the Proposed Settlement**

10.     The principal reasons for the proposed Settlement is the benefit to be provided to the Class of a certain settlement, compared to the risk that the Class would recover substantially less or nothing at all if the case were to be decided by the jury, and the benefit of providing a settlement to the Class now, compared to the risk that any verdict partially or wholly favorable to the Class would likely be appealed, delaying any recovery well into the future.

## NOTICE OF SETTLEMENT FAIRNESS HEARING

11.     NOTICE IS HEREBY GIVEN, pursuant to Rule 23 of the Federal Rules of Civil Procedure and by Order of the United States District Court for the Eastern District of New York, dated April 19, 2007, that a hearing will be held before the Honorable Charles P. Sifton, in the United States District Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201 at 4:30  p.m., on July 19, 2007 (the "Settlement Fairness Hearing") to determine whether a proposed settlement (the "Proposed Settlement") of the Action, as set forth in the Amended Stipulation and Agreement of Settlement dated February 7, 2007 (the "Stipulation"), is fair, reasonable and adequate, and to consider the proposed Plan of Allocation for the Settlement proceeds and the application of Plaintiffs' Counsel for attorneys' fees and reimbursement of expenses.

## BACKGROUND OF THE LITIGATION

12.     Beginning on March 8, 2002, nine class actions alleging violations of federal securities laws were filed in the United States District Court for the Eastern District of New York and two were filed in the United States District Court for the Eastern District of Virginia.  The two Eastern District of Virginia actions were transferred to the Eastern District of New York, and the eleven actions were consolidated, by Court Order dated January 17, 2003.[2]  That Order further appointed Plaintiffs Leumi PIA Sector Funds, Leumi PIA World Fund, and Leumi PIA Export Fund as the Lead Plaintiffs. On February 12, 2003, the Court appointed Cohen, Milstein, Hausfeld & Toll P.L.L.C., Glancy Binkow & Goldberg, LLP and Bernstein, Liebhard & Lifshitz, LLP as Plaintiffs' Co-Lead Counsel.

13.     On May 13, 2003, Lead Plaintiffs filed the Consolidated Class Action Complaint ("First Complaint"), asserting Defendants violated the federal securities laws.  Defendants moved to dismiss the First Complaint on July 15, 2003.  Defendants thereafter withdrew their motion without prejudice so that the parties could engage in mediation with the assistance of a retired United States District Court Judge.  After that mediation proved unsuccessful, Lead Plaintiffs filed the Amended Consolidated Class Action Complaint (the "Amended Complaint") on August 25, 2004, which added substantial additional allegations.

14.     Defendant Gilat is an Israeli company that provides products and services for satellite-based communications networks, in particular for communications using Very Small Aperture Terminals or "VSATs."  Defendant Yoel Gat was the Chairman and Chief Executive Officer during the Class Period, and Yoav Leibovitch was Vice President of Finance and Chief Financial Officer of Gilat during the Class Period (together, the "Individual Defendants").  During the Class Period, Gilat common stock traded on the NASDAQ National Market System (the "NASDAQ") under the ticker symbol "GILTF."  Gilat common stock now trades under the ticker symbol "GILT."

15.     The Amended Complaint alleges that Gilat and the Individual Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.§78j(b), ("Exchange Act") and Rule 10b-5 promulgated thereunder, and that the Individual Defendants, as "control persons," violated Section 20(a) of the Exchange Act.  More specifically, the Amended Complaint alleges that the Defendants artificially inflated Gilat's financial results during the Class Period by misrepresenting a wide ranging series of transactions, in violation of Generally Accepted Accounting Principals ("GAAP") and Gilat's internal accounting policies, including by allegedly recognizing revenues not actually earned until subsequent quarters; allegedly recognizing revenue where there was no final sales agreement between the parties; allegedly recognizing revenue in violation of GAAP and Gilat's internal policies by failing to obtain adequate assurances of payment; allegedly recognizing revenue on sham transactions that lacked substance (e.g., round-trip arrangements); allegedly recognizing revenue on contingent sales; allegedly failing to timely write off uncollectible accounts receivable and/or record a provision for probable bad debt and impaired assets; and allegedly converting debt to equity to mask bad debt losses as capital losses.  The Amended Complaint further alleges that Defendants made false and misleading statements during the Class Period regarding a corporation formed by Gilat, Echostar, Microsoft Corp., and ING Barings, called StarBand.  StarBand was formed to sell two-way satellite Internet service, primarily to customers in rural areas. The Amended Complaint alleges that Defendants falsely claimed to have enormous success in signing up customers and to be entering new distribution channels, while in reality there were serious problems with StarBand's service and in signing up new subscribers.  The Amended Complaint also alleges that Defendants failed to disclose that EchoStar failed to market StarBand as promised and that StarBand's lenders withdrew a $37 million credit line, and falsely stated that Gilat's total financial exposure to StarBand would not exceed $75 million.  You may view a copy of the Amended Complaint by visiting Plaintiffs' Co-Lead Counsel's website at http://www.cmht.com/pdfs/GilatComplaint082504.pdf.

---

[2] There is one other action pending in Israel.  *Emmanuel Lieben v. Gilat Satellite Networks Ltd., Yoel Gat, Yoav Leibovitz, and Kost Forrere & Gabay CPA*, Civil Case (Tel Aviv) 1456/02 (Tel-Aviv Jaffa Dist. Ct.), is a putative class action, filed after a number of the U.S. actions had already been filed. Following a motion by Defendants Gilat, Gat & Leibowitz to stay or dismiss the action, the Court on October 10, 2002 stayed the action as to these three Defendants pending the outcome of the U.S. litigation.

16.     Gilat commenced a proceeding in Israel in October 2002 to restructure $350 million in convertible notes, and completed the restructuring in March 2003.

17.     Lead Plaintiffs further allege that Plaintiffs and the other Class Members purchased Gilat securities during the Class Period at prices that were artificially inflated as a result of the dissemination by Defendants of materially false and misleading statements regarding Gilat in violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, and were damaged thereby.

18.     Defendants have denied and continue to deny all of Lead Plaintiff's allegations of wrongdoing, including, but not limited to, allegations that Defendants made any false or misleading statement or failed to disclose any material fact.

## BACKGROUND TO THE PROPOSED SETTLEMENT

19.     After Lead Plaintiffs filed the Amended Complaint, Defendants moved to dismiss the Amended Complaint on October 29, 2004.  The Court granted in part and denied in part Defendants' motion to dismiss, on September 19, 2005.

20.     Prior to entering into the proposed Settlement, Plaintiffs' Counsel conducted a thorough investigation relating to the events and transactions underlying Plaintiffs' claims.  In the course of preparing the Amended Complaint, Lead Plaintiffs conducted an extensive investigation that included interviewing a number of former employees and reviewing several hundred pages of internal Gilat documents, as well as researching numerous public sources.  Plaintiffs' Counsel's decision to enter into this proposed Settlement was made with extensive knowledge of the facts and circumstances underlying Plaintiffs' claims and the strengths and weaknesses of those claims.  In determining to settle this litigation, they have taken into account the substantial risks of litigation, including the cost of discovery which is expected to be substantial in light of the overseas location of Gilat and many of the third parties with which it transacted business, the possibility that Plaintiffs would not obtain sufficient evidence to support their claims, the risk that Defendants would successfully move for summary judgment and obtain dismissal of some or all of Plaintiffs' claims, and the risk that if the case went to trial, a jury would render a verdict partially or wholly in favor of the Defendants with respect to liability and/or damages.  Along with these significant risks, Plaintiffs' Counsel has also considered the expense and length of time necessary to prosecute the litigation through the end of trial, post-trial motions, and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this complex litigation.  Further, the proposed settlement was reached after the parties (including Defendants' insurance carriers) participated in a two-day mediation with the assistance of a retired judge.  Prior to the mediation, on June 19, 2006, Defendants filed a motion for judgment on the pleadings and a motion for partial summary judgment, and these motions were pending at the time of settlement.  Either motion, if granted, would have resulted in dismissal of the Action in whole or in substantial part.

21.     Counsel for Plaintiffs believes that the proposed Settlement described herein confers substantial benefits upon the Class.  Based upon their consideration of all of these factors, Lead Plaintiffs and its counsel have concluded that it is in the best interests of Plaintiffs and the Class to settle the Action on the terms described herein.

22.     Plaintiffs recognized the uncertainty and the risk of the outcome of any litigation, especially complex litigation such as this, and the difficulties and risks inherent in the outcome of this Action.  Plaintiffs desired to settle the claims of the Class against the Defendants on the terms and conditions described herein which provide substantial benefits to the Class.  Plaintiffs' Counsel deems such settlement to be fair, reasonable and adequate, and in the best interests of the members of the Class.

23.     Defendants have denied all averments of wrongdoing or liability in the Action and all other accusations of wrongdoing or violations of law.  Defendants have expressly denied that they made any misstatements, that the price of any Gilat security was artificially inflated by reason of any alleged misstatement, or that the Class was harmed by the conduct alleged in the Action.  The Proposed Settlement is not and shall not be construed or be deemed to be evidence or an admission or a concession on the part of Defendants of any fault or liability or damages whatsoever, and Defendants do not concede any infirmity in the defenses which they have asserted or intended to assert in the Action.

24.     While continuing to deny all allegations of wrongdoing, violations of law, or liability whatsoever, Defendants desire to settle and terminate all existing or potential claims against them, without in any way acknowledging any fault or liability.

25.     The amount of damages, if any, that Plaintiffs could prove was also a matter of serious dispute, and the proposed Settlement's use of a Recognized Claim formula for distributing the Settlement proceeds does not constitute a finding, admission or concession that provable damages could be measured by the Recognized Claim formula.  No determination has been made by the Court as to liability or the amount, if any, of damages suffered by the Class, or the proper measure of any such damages.  The determination of damages, like the determination of liability, is a complicated

and uncertain process, typically involving conflicting expert opinions. The proposed Settlement herein provides an immediate and substantial cash benefit and avoids the risks that liability or damages might not have been proven at trial.

26.     The Court has not determined the merits of the Plaintiffs' claims or the defenses thereto. This Settlement Notice does not imply that there has been or would be any finding of violation of the law or that recovery could be had in any amount if the Action was not settled.

## TERMS OF THE PROPOSED SETTLEMENT

27.     Lead Plaintiffs have moved for certification of a class of Gilat securities purchasers for the purposes of Settlement (the "Class"). The Class consists of all persons and entities who purchased or otherwise acquired[3] Gilat common stock between February 10, 2000 and May 31, 2002, inclusive. Excluded from the Class are the defendants named in the Amended Consolidated Class Action Complaint – Gilat, Yoel Gat, and Yoav Leibovitch (collectively, "Defendants") – members of the immediate family of each of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party. "Related to or affiliated with" means all companies, subsidiaries, joint ventures, joint subsidiaries, or other entities controlled by any Defendant, or any entity that is or was under common corporate ownership or control with any Defendant. Also excluded from the Class are any putative Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in this Notice.

28.     In full and complete settlement of the Settled Claims (as defined below), and subject to the terms and conditions of the Stipulation, Defendants have agreed to cause to be paid twenty million dollars ($20,000,000.00) (the "Cash Settlement Amount") into escrow on behalf of Plaintiffs and the Class.

29.     Pursuant to the proposed Settlement, and on the Effective Date, Plaintiffs and other members of the Class who do not exclude themselves therefrom on behalf of themselves, their heirs, executors, administrators, successors and assigns, shall release and forever discharge, and shall forever be enjoined from prosecuting each and every Settled Claim (defined below) against the Released Parties (defined below).

30.     The Defendants are Gilat Satellite Networks Ltd., Yoel Gat and Yoav Leibovitch, who shall be released from all Settled Claims, as defined below. In addition, the proposed Settlement will release all Class Members' Settled Claims against any and all of the Defendants and their respective present and former affiliates, predecessors, successors, and assigns, and each of their respective family members, heirs, executors, and administrators, and any corporate entity affiliated with any of the Defendants, each of their present and former officers, directors, employees, partners, principals, trustees, attorneys, auditors, accountants, investment bankers, consultants, agents, insurers and co-insurers and each of their respective heirs, executors, administrators, predecessors, successors and assigns (collectively, the "Released Parties").

31.     "Settled Claims" means any and all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or Unknown Claims (as Unknown Claims is defined herein), whether or not concealed, including claims for negligence, gross negligence, breach of fiduciary duty or care and/or breach of duty of loyalty, fraud or violations of any state or federal statutes, rules or regulations, by any individual, derivative or class plaintiff against Defendants and the Released Parties arising out of, based upon or related to the purchase, acquisition or sale of Gilat common stock during the Class Period and the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act that were or could have been alleged in the Action.

32.     "Settled Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by Defendants, or their successors and assigns, against the Lead Plaintiffs, the Plaintiffs, Class Members, or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action, except claims relating to the enforcement of the Settlement of the Action.

33.     "Unknown Claims" means any and all Settled Claims which Plaintiffs or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, and any Settled Defendant's Claims which the Defendants do not know or suspect to exist in their favor, which if known by them might have affected their decision(s) with respect to the proposed Settlement. With respect to any and all Settled Claims and Settled

---

[3] Common stock (and other securities) may be acquired by means other than purchase on the open market. Examples of other methods of acquisition include acquiring stock by exercising warrants or stock options, or acquiring stock through an employer stock distribution. The Class is defined to include class members who acquired Gilat common stock through such means other than open market purchases.

Defendant's Claims, the parties stipulate and agree that upon the Effective Date, Plaintiffs and Defendants shall expressly, and each Class Member shall be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

34.    If the proposed Settlement is approved by the Court, all Settled Claims will be dismissed on the merits and with prejudice as to all Class Members and all Class Members shall be forever barred from prosecuting a class action or any other action raising any Settled Claims against any of the Released Parties.

35.    The proposed Settlement will become effective at such time as an Order entered by the Court approving the Settlement shall become final and not subject to appeal (the "Effective Date").

### PROPOSED PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AMONG CLASS MEMBERS

36.    The Cash Settlement Amount and the interest earned thereon shall be the Gross Settlement Fund. The Gross Settlement Fund, less all taxes, approved costs, fees and expenses (the "Net Settlement Fund") shall be distributed to members of the Class who submit acceptable Proofs of Claim and Release ("Authorized Claimants").

37.    The Claims Administrator, The Garden City Group, Inc. ("Garden City"), shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim." The Recognized Claim is a calculation of a particular Authorized Claimant's losses that are recognized as compensable in some measure under the Settlement. The amount of such potentially compensable losses, or the total Recognized Claim, will be calculated according to the Plan of Allocation described in ¶¶ 38-39. A "Recognized Loss" is the amount of loss recognized as compensable under the Plan of Allocation for any single transaction (so that the Recognized Claim is the aggregate of all of a claimant's Recognized Losses). A claimant's Recognized Claim is not intended to be an estimate of the amount that the Class Member might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants, based on each Authorized Claimant's corresponding *pro rata* share of the Net Settlement Fund.

38.    The proposed plan of allocation described below ("Plan of Allocation") reflects the Lead Plaintiffs' allegations that the price of Gilat's common stock was inflated artificially during the Class Period by reason of allegedly false and misleading statements repeatedly made by the Defendants during the Class Period, as follows:

Lead Plaintiffs allege that the artificial inflation had begun by February 10, 2000,[4] and that thereafter Gilat's stock continued to be inflated throughout the Class Period, by Defendants' allegedly false or misleading statements to the market concerning Gilat's financial results and condition, which Lead Plaintiffs allege were inflated by illegal accounting practices, and concerning the StarBand venture. The Plan of Allocation was also prepared with the input of Lead Plaintiffs' damages consultant, who undertook a study to determine the levels at which Gilat's common stock price was inflated due to Defendants' alleged misconduct at various times throughout the Class Period.

The first alleged partial disclosure of fraud occurred on March 9, 2001, when Defendants revealed that a previously announced initial public offering of StarBand stock would not proceed. For stock purchased before 2:40 p.m. EST[5] on March 9, 2001, Lead Plaintiffs' damages consultant concluded that the price of Gilat common stock was inflated by $16.62 per share. Accordingly, for common stock purchased prior to 2:40 p.m. EST on March 9, 2001 and held through the end of the Class Period, the Plan of Allocation provides for a maximum Recognized Loss of $16.62.[6] For

---

[4] Lead Plaintiffs allege that Defendants' misstatements first occurred on February 9, 2000; however, this information was not widely disseminated until 4:18 p.m. EST, after the close of trading. Accordingly, artificial inflation began on the next trading day, February 10, 2000.

[5] The March 9, 2001 disclosure was first reported at 2:40 p.m. EST via the Dow Jones News Service.

[6] Lead Plaintiffs recognize that it may not be possible for some investors who purchased, acquired or sold Gilat shares on March 9, 2001 to demonstrate the time of day at which their shares were traded. For this limited number of investors who cannot produce documentation for their time of purchase, acquisition or sale on this specific date, the Plan of Allocation provides that investors who purchased, acquired or sold shares at or above $32.875 per share will be deemed to have purchased, acquired or sold prior to 2:40 p.m. EST on March 9, 2001, whereas investors who purchased, acquired or sold Gilat shares at prices less than $32.875 will be deemed to have purchased, acquired or sold after 2:40 p.m. EST. $32.875 per share is the price of the last trade of Gilat shares immediately preceding the March 9, 2001 partial disclosure, after which time Gilat shares traded below this price.

stock sold earlier than the end of the Class Period, and thus before the full amount of alleged inflation had gone out of the stock, the Recognized Loss will be lower than the maximum.

Lead Plaintiffs contend that the March 9, 2001 announcement was a partial disclosure of fraud because, they allege, it revealed that the conditions and prospects for StarBand were not as favorable as Defendants had previously, and falsely, claimed. Lead Plaintiffs also contend that the partial disclosure caused the price of Gilat stock to fall. Lead Plaintiffs' damages consultant concluded that $1.19 of the stock price decline that day was attributable to the StarBand announcement, thus leaving $15.43 of inflation, out of the initial $16.62 of inflation, in the stock. Accordingly, for purchases after 2:40 p.m. EST on March 9, 2001, but prior to March 12, 2001, and held through the end of the Class Period, the Plan of Allocation provides for a maximum Recognized Loss of $15.43. For stock sold earlier than the end of the Class Period, and thus before the full amount of alleged inflation had gone out of the stock, the Recognized Loss will be lower than the maximum.

Lead Plaintiffs also claim that alleged fraud by Defendants was further partially revealed on March 12, 2001, when Defendants announced downwardly-revised earnings guidelines for Gilat. Lead Plaintiffs' damages consultant found that the decline in Gilat's stock price of $13.10 was attributable to Defendants' disclosures, thus removing $13.10 of inflation from the remaining $15.43 of inflation, and that Gilat's stock thereafter was inflated by $2.33. Because the March 12, 2001 disclosure was issued at 8:57 a.m. EST, which was prior to the market's opening, the Plan of Allocation presumes that all purchases of stock on March 12, 2001, occurred after the partial disclosure and stock price decline that day. Accordingly, for purchases made on or after March 12, 2001 but before October 3, 2001, and held through the end of the Class Period, the Plan of Allocation provides for a maximum Recognized Loss of $2.33. For stock sold earlier than the end of the Class Period, and thus before the full amount of alleged inflation had gone out of the stock, the Recognized Loss will be lower than the maximum.

Lead Plaintiffs further allege that on October 2, 2001,[7] Defendants made a further partial disclosure by announcing that Gilat would take tens of millions of dollars in charges and make an additional bad debt reserve of $10 million, after which Gilat's common stock price declined further. Lead Plaintiffs' damages consultant concluded that after this announcement, which contained another misstatement of Gilat's bad debt reserve, the price of Gilat common stock was again inflated by $0.30 due to Defendants' alleged fraud.[8] Accordingly, for common stock purchased on or after October 3, 2001 but on or before May 31, 2002, and held through the end of the Class Period, the Plan of Allocation provides for a maximum Recognized Loss of $0.30. For stock sold earlier than the end of the Class Period, and thus before the full amount of alleged inflation had gone out of the stock, the Recognized Loss will be lower than the maximum. Lead Plaintiffs allege that the final disclosure of alleged fraud occurred on May 31, 2002, when Defendants filed their Form 20-F with the SEC, announcing increased reserves for uncollectible accounts receivables. This date, May 31, 2002, marks the end of the Class Period, and no purchases after this date are recognized under the Plan of Allocation.

39.    Accordingly, an Authorized Claimant's Recognized Claim will be calculated for the purposes of Settlement according to the following Plan of Allocation:

For shares of common stock purchased on or after February 10, 2000 and prior to 2:40 p.m. EST on March 9, 2001, and

    i.    retained at the end of trading on August 28, 2002, the Recognized Loss shall be the lesser of:

        1.    $16.62 per share; or
        2.    the difference between the purchase price per share and $0.95;[9]

    ii.    sold between February 10, 2000 and 2:40 p.m. EST on March 9, 2001, inclusive, there shall be no Recognized Loss;

    iii.    sold after 2:40 p.m. EST on March 9, 2001 but prior to March 12, 2001, the Recognized Loss shall be the lesser of:

---

[7] This disclosure was issued at 5:53 p.m. EST, after the market had closed.

[8] After the October 2, 2001 disclosure, the $2.33 of previous inflation was removed; however, the disclosure contained an additional misstatement which caused a new inflation of $0.30.

[9] Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), plaintiffs' damages for shares held after a 90-day period following the last corrective disclosure (beginning on the date of the corrective disclosure) are limited in securities class actions by the mean stock trading price for the 90-day period. Pursuant to Section 21 (D)(e)(2) of the PSLRA, if the plaintiff sold the stock in the same 90-day period, his or her damages may not exceed the difference between the purchase price and the mean trading price of the security during the period between the corrective disclosure and the date of sale. The 90-day period in this case starts on May 31, 2002 and ends on August 28, 2002. The mean closing price of Gilat common stock during this 90-day period was $0.95.

    1.    $1.19 per share; or
    2.    the difference between the purchase price per share and the sales price per share;[10]

    iv.    sold between March 12, 2001 and October 2, 2001, inclusive,  the Recognized Loss shall be the lesser of:

    1.    $14.29 per share; or
    2.    the difference between the purchase price per share and the sales price per share;

    v.    sold between October 3, 2001 and May 31, 2002, inclusive,  the Recognized Loss shall be the lesser of:

    1.    $16.32 per share; or
    2.    the difference between the purchase price per share and the sales price per share;

    vi.    sold between June 1, 2002 and August 28, 2002, inclusive,  the Recognized Loss shall be the lesser of:

    1.    $16.62 per share; or
    2.    the difference between the purchase price per share and the sales price per share; or
    3.    the difference between the purchase price per share and the mean closing price of Gilat common stock between May 31, 2002 and the date of sale.[11]

For shares of common stock purchased after 2:40 p.m. EST on March 9, 2001 but prior to March 12, 2001, and

    vii.    retained at the end of trading on August 28, 2002, the Recognized Loss shall be the lesser of:

    1.    $15.43 per share; or
    2.    the difference between the purchase price per share and $0.95;

    viii.    sold on March 9, 2001, there shall be no Recognized Loss;

    ix.    sold between March 12, 2001 and October 2, 2001, inclusive,  the Recognized Loss shall be the lesser of:

    1.    $13.10 per share; or
    2.    the difference between the purchase price per share and the sales price per share;

    x.    sold between October 3, 2001 and May 31, 2002, inclusive,  the Recognized Loss shall be the lesser of:

    1.    $15.13 per share; or
    2.    the difference between the purchase price per share and the sales price per share;

    xi.    sold between June 1, 2002 and August 28, 2002, inclusive,  the Recognized Loss shall be the lesser of:

    1.    $15.43 per share; or
    2.    the difference between the purchase price per share and the sales price per share; or
    3.    the difference between the purchase price per share and the mean closing price of Gilat common stock between May 31, 2002 and the date of sale.

For shares of common stock purchased between March 12, 2001 and October 2, 2001, inclusive, and

    xii.    retained at the end of trading on August 28, 2002, the Recognized Loss shall be the lesser of:

    1.    $2.33 per share; or

---

[10] As noted above, for those investors who purchased on March 9, 2001 and are unable to demonstrate the time of their transactions, purchases at less than $32.875 per share will be deemed to have been made after 2:40 p.m. EST.

[11] *See supra* note 8.

    2.    the difference between the purchase price per share and $0.95;

xiii.    sold between March 12, 2001 and October 2, 2001, inclusive, there shall be no Recognized Loss;

xiv.    sold between October 3, 2001 and May 31, 2002, inclusive,  the Recognized Loss shall be the lesser of:

    1.    $2.03 per share; or
    2.    the difference between the purchase price per share and the sales price per share;

xv.    sold between June 1, 2002 and August 28, 2002, inclusive,  the Recognized Loss shall be the lesser of:

    1.    $2.33 per share; or
    2.    the difference between the purchase price per share and the sales price per share; or
    3.    the difference between the purchase price per share and the mean closing price of Gilat common stock between May 31, 2002 and the date of sale.

For shares of common stock purchased between October 3, 2001 and May 31, 2002, inclusive, and

xvi.    retained at the end of trading on August 28, 2002, the Recognized Loss shall be the lesser of:

    1.    $0.30 per share; or
    2.    the difference between the purchase price per share and $0.95;

xvii.    sold between October 3, 2001 and May 31, 2002, inclusive,  there shall be no Recognized Loss

xviii.    sold between June 1, 2002 and August 28, 2002, inclusive,  the Recognized Loss shall be the lesser of:

    1.    $0.30 per share; or
    2.    the difference between the purchase price per share and the sales price per share; or
    3.    the difference between the purchase price per share and the mean closing price of Gilat common stock between May 31, 2002 and the date of sale.

40.    In processing claims, the following criteria will be used:

The first-in-first-out ("FIFO") basis will be applied to purchases and sales.  Sales will be matched in chronological order, by trade date, first against the securities held as of the close of trading on February 9, 2000 (the last day before the Class Period begins) and then against the purchases during the Class Period.

Transactions resulting in recognized gains will be excluded from calculation of the net Recognized Claim.

Where securities were purchased or sold by reason of having exercised an option or warrant, the cost/proceeds associated with such option or warrant shall be incorporated into the price accordingly.

Shares originally sold short shall have a Recognized Claim of zero.

No cash payments will be made on a Recognized Claim where the potential distribution amount is less than $5.00.  As is customary in plans of allocation for securities class action settlements, a de minimus threshold is set in order to preserve the overall Settlement Fund from the costs of claims that are likely to exceed the value of those claims.  It has been determined by counsel for the parties $5.00 is a reasonable de minimus threshold.  A claimant that falls into this category may opt for exclusion from this action as set forth in paragraphs 44-46 below.

For shares purchased on March 9, 2001, claimants should submit documentation of the time the shares were purchased, if available.  As noted above, if this is not possible, purchases on March 9, 2001 that were less than $32.875 per share will be deemed to have been made after 2:40 p.m. EST.

41.    Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants.

42.    Class Members who do not submit timely, acceptable and valid Proofs of Claim and Release are not Authorized Claimants and will not share in the settlement proceeds, but will nevertheless be bound by the Settlement and by the Order and Final Judgment of the Court dismissing this Action.

43.    Checks will be distributed to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement.  If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after Garden City has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed to Class Members who have cashed their checks and who would receive at least $5.00 each from such re-distribution.  If, after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by agreement of Plaintiffs' Co-Lead Counsel and counsel for the Defendants.

## THE RIGHTS OF CLASS MEMBERS

44.    Class Members shall be bound by all determinations and judgments in this Action, whether favorable or unfavorable, unless such persons request exclusion from the Class in a timely and proper manner, as hereinafter provided.  A Class Member wishing to make such request shall mail the request in written form by first-class mail **postmarked no later than June 29, 2007** to:

In re Gilat Satellite Networks Ltd.
c/o The Garden City Group, Inc.
Claims Administrator
Exclusions
P. O. Box 9090
Dublin, OH  43017-0990
U.S.A.

45.    Such request for exclusion shall clearly indicate the name and address of the person seeking exclusion, that the sender requests to be excluded from the Class in the Gilat Securities Litigation, and must be signed by such person. Such persons requesting exclusion are also requested to state: their telephone number and the date(s), price(s), and number(s) of shares of all purchases and sales of Gilat securities during the Class Period.  The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court.

46.    Class Members requesting exclusion from the Class shall not be entitled to receive any payment out of the Net Settlement Fund as described herein.  Class Members who have previously requested exclusion from the Class need not make an additional request for exclusion, and will not share in the distribution of the Net Settlement Fund.

## SUBMISSION AND PROCESSING OF PROOFS OF CLAIM

47.    In order to be eligible to receive any distribution from the Net Settlement Fund, you must complete and sign the accompanying Proof of Claim and Release form and send it to the Claims Administrator via first class mail, **postmarked on or before September 3, 2007**, at the address below:

In re Gilat Satellite Networks Ltd.
c/o The Garden City Group, Inc.
Claims Administrator
P. O. Box 9090
Dublin, OH  43017-0990
U.S.A.

**NOTICE REGARDING ELECTRONIC FILES**: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files in the required file layout.  All claimants **MUST** submit a manually signed paper Proof of Claim form listing all their transactions whether or not they also submit electronic copies.  If you wish to file your claim electronically, you must contact the Claims Administrator at 1-800-256-5848 (in Israel please call 014 800 747 27472) or visit the website at www.gardencitygroup.com to obtain the required file layout.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the Claimant a written acknowledgement of receipt and acceptance of electronically submitted data.

48.    If you do not submit an acceptable Proof of Claim and Release, you will not be entitled to any share of the Net Settlement Fund.

49.    All Proofs of Claim and Release must be submitted by the date specified in this Notice unless such period is extended by Order of the Court.

50.    Each Claimant shall be deemed to have submitted to the jurisdiction of the United States District Court for the Eastern District of New York with respect to his, her or its Proof of Claim and Release.

## SETTLEMENT FAIRNESS HEARING

51.    At the Settlement Fairness Hearing, the Court will determine whether to finally approve this proposed Settlement and dismiss the Action and the claims of the Plaintiffs and the Class Members.  The Court will also determine whether the proposed Plan of Allocation for the Settlement proceeds is fair and reasonable.  The Settlement Fairness Hearing may be adjourned from time to time by the Court without further written notice to the Class.  If you intend to attend the Settlement Fairness Hearing, you should confirm the date and time with Plaintiffs' Co-Lead Counsel.  If the Settlement is approved, the Court will also consider the application of Plaintiffs' Counsel for attorneys' fees and reimbursement of costs and expenses.

52.    At the Settlement Fairness Hearing, any Class Member who has not submitted a request for exclusion from the Class, as described in ¶¶44-46 above, may appear in person or by counsel and be heard to the extent allowed by the Court in opposition to the fairness, reasonableness and adequacy of the proposed Settlement, the proposed Plan of Allocation, or the application for an award of attorneys' fees and reimbursement of expenses.  However, in no event shall any person be heard in opposition to the proposed Settlement, the proposed Plan of Allocation, or Plaintiffs' Counsel's application for attorneys' fees and expenses, and in no event shall any paper or brief submitted by any such person be accepted or considered by the Court, unless, on or before July 5, 2007, such person (a) files with the Clerk of the Court at the United States District Courthouse located at 225 Cadman Plaza East, Brooklyn, New York, 11201, notice of such person's intention to appear, showing proof of such person's membership in the Class by listing the date(s), price(s), and number(s) of shares of all purchases, acquisitions, and sales of Gilat common stock during the Class Period, and providing a statement that indicates the basis for such opposition, along with any documentation in support of such objection; and (b) simultaneously serves copies of such notice, proof, statement and documentation, together with copies of any other papers or briefs such person files with the Court, in person or by mail upon:

| | |
|---|---|
| Steven J. Toll, Esq. | Joseph P. Cyr |
| Daniel S. Sommers | Andrew M. Behrman |
| Joseph P. Helm, III | LOVELLS |
| COHEN, MILSTEIN, HAUSFELD | 590 Madison Avenue |
| & TOLL, P.L.L.C. | New York, NY  10022 |
| 1100 New York Avenue, N.W. | Telephone: (212) 909-0600 |
| West Tower, Suite 500 | Facsimile: (212) 909-0660 |
| Washington, D.C.  20005 | |
| Telephone:  (202) 408-4600 | *Defendants' Counsel* |
| Facsimile:   (202) 408-4699 | |
| | |
| Jeffrey M. Haber | Lionel Z. Glancy |
| Michael S. Bigin | Robin B. Howald |
| BERNSTEIN LIEBHARD & LIFSHITZ, LLP | Marc L. Godino |
| 10 East 40th Street | GLANCY BINKOW & GOLDBERG LLP |
| New York, NY  10016 | 1801 Avenue of the Stars, Suite 311 |
| Telephone: (212) 779-1414 | Los Angeles, CA  90067 |
| Facsimile: (212) 779-3218 | Telephone:  (310) 201-9150 |
| | Facsimile:  (310) 201-9160 |
| | |
| | *Plaintiffs' Co-Lead Counsel* |

Attendance at the hearing is not necessary; however, persons wishing to be heard orally in opposition to the approval of the proposed Settlement, the proposed Plan of Allocation, and/or the request for attorneys' fees are required to indicate in their written objection their intention to appear at the hearing.  Persons who intend to object to the proposed Settlement, the proposed Plan of Allocation, and/or counsel's application for an award of attorneys' fees and expenses and desire to present evidence at the Settlement Fairness Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Settlement Fairness Hearing.  Class Members do not need to appear at the hearing or take any other action to indicate their approval of the proposed Settlement, the proposed Plan of Allocation, or Plaintiffs' Counsel's application for recovery of attorneys' fees and expenses.

## ATTORNEYS' FEES AND DISBURSEMENTS

53.    At the Settlement Fairness Hearing, or at such other time as the Court may direct, Plaintiffs' Counsel intends to apply to the Court for an award of attorneys' fees from the Settlement Fund of 30% of the Gross Settlement Fund and for reimbursement of their expenses of approximately $600,000, plus interest at the same rate as earned by the Settlement Fund.  Plaintiffs' Counsel, without further notice to the Class, may subsequently apply to the Court for fees and expenses incurred in connection with administering and distributing the Net Settlement proceeds to the members of the Class and any proceedings subsequent to the Settlement Fairness Hearing.  Under the terms of the Stipulation, ¶ 8, as approved by the Court, Plaintiffs' Counsel and the Claims Administrator may expend up to $300,000 for this purpose without further permission of the Court.  This amount, like other fees and expenses for claims administration, will be deducted from the Gross Settlement Fund.

## FURTHER INFORMATION

54.    Class Members may obtain a copy of the Stipulation of Settlement and accompanying papers from the claim administrator's website, as www.gardencitygroup.com/cases/.  Pleadings, orders of the Court, and other papers filed in this Action may be inspected at the Office of the Clerk of the United States District Court for the Eastern District of New York, United States District Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201, during regular business hours.

55.    ALL INQUIRIES BY CLASS MEMBERS CONCERNING THIS SETTLEMENT NOTICE OR THE PROOF OF CLAIM AND RELEASE SHOULD BE MADE TO GARDEN CITY AS INDICATED BELOW.

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

56.    If you purchased or otherwise acquired Gilat common stock during the period from February 10, 2000, through and including May 31, 2002 for the beneficial interest of a person or organization other than yourself, the Court has directed that, WITHIN TEN (10) DAYS OF YOUR RECEIPT OF THIS SETTLEMENT NOTICE, you either: (a) provide to Garden City the name and last known address of each person or organization for whom or which you so acted, preferably in electronic format – MS Word or WordPerfect files (label size Avery #5162) or MS Excel data table setting forth (i) title/registration, (ii) street address, (iii) city/state/zip code – or on computer-generated mailing labels; or (b) send copies of the Settlement Notice and Proof of Claim ("Notice") directly to all beneficial owners by first class mail and provide Garden City with written confirmation of having done so.  Additional copies of the Notice may be requested by contacting:

In re Gilat Satellite Networks Ltd.
c/o The Garden City Group, Inc.
Claims Administrator
P. O. Box 9090
Dublin, OH  43017-0990
U.S.A.
Telephone: 1(800) 256-5848 (in the United States)
014 800 747 27472 (in Israel)
Website: www.gardencitygroup.com/cases/

or in Israel:

Law Office of Jacob Sabo
(972)(03) 736-2359
gilat.litigation@gmail.com

You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including the research of records and the generating of labels or the cost of postage.  Those expenses will be paid after submission of a written request and appropriate supporting documentation.  All communications concerning the foregoing should be addressed to Garden City.

**DO NOT CONTACT THE COURT CONCERNING
THE SETTLEMENT OR THIS NOTICE**

Dated:  May 9, 2007                                              BY ORDER OF THE COURT
                                                                Brooklyn, New York

## <u>DECLARATION OF SERVICE</u>

I am an attorney admitted to practice in this district.  I hereby certify, under penalty of perjury, that on this 24th day of July, 2007, I caused a true and correct copy of the foregoing DECLARATION OF JACOB SABO IN FURTER SUPPORT OF THE MOTION OF DIKLA MONDIAL MUTUAL FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL to be served on the persons listed below, 1) through this court's ECF system, and 2) by causing a true copy thereof to be delivered by regular United States mail, postage prepaid:

*For Plaintiffs:*

David Avi Rosenfeld
Samuel Howard Rudman
Lerach, Coughlin, Stoia,
    Geller, Rudman & Robbins, LLP
58 South Service Road, Suite 200
Melville, NY 11747

Jack Gerald Fruchter
Abraham Fruchter & Twersky LLP
One Penn Plaza, Suite 1910
New York, NY 10119

D. Seamus Kaskela
Richard A. Maniskas
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Rd.
Radnor, PA 19087

Evan J Smith
Brodsky & Smith, L.L.C.
240 Mineola Blvd.
Mineola, NY 11501

Corey D. Holzer
Michael I. Fistel, Jr.
Holzer Holzer & Cannon LLC
1117 Perimeter Center West, E-107
Atlanta, GA 30338

Nadeem Faruqi
Shane Thomas Rowley
Antonio Vozzolo
Faruqi & Faruqi, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017

Michael Swick
Kahn Gauthier Swick, LLC
12 East 41st st, 12th floor
New York, NY 10017

***For Defendants:***

General Counsel
Allot Communications Ltd.
 c/o Allot Communications, Inc.
7664 Golden Triangle Drive
Eden Prairie, MN 55344
Telephone: 877-255-6826
Facsimile:  952-944-9555

Yigal Jacoby
c/o Allot Communications, Inc.
7664 Golden Triangle Drive
Eden Prairie, MN 55344
Telephone: 877-255-6826
Facsimile:  952-944-9555

Rami Hadar
c/o Allot Communications, Inc.
7664 Golden Triangle Drive
Eden Prairie, MN 55344
Telephone: 877-255-6826
Facsimile:  952-944-9555

Adi Sapir
c/o Allot Communications, Inc.
7664 Golden Triangle Drive
Eden Prairie, MN 55344
Telephone: 877-255-6826
Facsimile:  952-944-9555


_____/s/Gregory B. Linkh_____
        Gregory B. Linkh (GL-0477)