**KAHN GAUTHIER SWICK, LLC**
Michael A. Swick (MS-9970)
Kim E. Miller (KM-6996)
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730
Fax: (504) 455-1498

**KAHN GAUTHIER SWICK, LLC**
Lewis S. Kahn
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 455-1400
Fax: (504) 455-1498

*Counsel for the Chen Group and*
*Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRICKMAN INVESTMENTS, INC., Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ALLOT COMMUNICATIONS, LTD., YIGAL JACOBY, RAMI HADAR AND ADI SAPIR, <br><br> Defendants. | DOCKET NUMBER: 07-cv-3455 <br><br> HON. RICHARD J. HOLWELL |

(Caption continued on the following page)

**REPLY MEMORANDUM IN FURTHER SUPPPORT OF THE MOTION OF THE CHEN GROUP TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

| | |
|---|---|
| GERALD BILGER, Individually And On Behalf of All Others Similarly Situated, | DOCKET NUMBER: 07-cv-3815 |
| Plaintiff, | HON. RICHARD J. HOLWELL |
| vs. | |
| ALLOT COMMUNICATIONS, LTD., YIGAL JACOBY, RAMI HADAR AND ADI SAPIR, | |
| Defendants. | |
| ELIYAHU MOKHTAR, Individually And On Behalf of All Others Similarly Situated, | DOCKET NUMBER: 07-cv-5456 |
| Plaintiff, | HON. RICHARD J. HOLWELL |
| vs. | |
| ALLOT COMMUNICATIONS, LTD., YIGAL JACOBY, RAMI HADAR AND ADI SAPIR, | |
| Defendants. | |
| SHANNON VINSON, Individually And On Behalf of All Others Similarly Situated, | DOCKET NUMBER: 07-cv-5457 |
| Plaintiff, | HON. RICHARD J. HOLWELL |
| vs. | |
| ALLOT COMMUNICATIONS, LTD., YIGAL JACOBY, RAMI HADAR AND ADI SAPIR, | |
| Defendants. | |

**INTRODUCTION**

The Chen Group respectfully submits this reply memorandum in further support of its motion to consolidate the related cases, to be appointed Lead Plaintiff, and to approve its choice of counsel, pursuant to the Private Securities Litigation Reform Act ("PSLRA").[1]

Currently pending before this Court is only one other competing motion to be appointed Lead Plaintiff in this matter, by movant Dikla Mondial.[2] For the reasons discussed below, this Court should deny Dikla Mondial's motion and appoint the Chen Group Lead Plaintiff in this action. Dikla Mondial has failed to rebut the presumption afforded the Chen Group under the PSLRA that it is the most adequate plaintiff, based upon its greater loss, that otherwise satisfies Fed. R. Civ. P. Rule 23's adequacy and typicality requirements. Instead, in an eleventh-hour attempt to cure the fatal deficiencies identified in its PSLRA Certification and motion by the Chen Group, Dikla Mondial has reflexively submitted declarations by its proposed Israeli lead counsel and the purported CEO of its "paid fund manager", Migdal Mutual Fund Management, Ltd. ("Migdal"), declarations that fail to rebut the Chen Group's serious concerns about Dikla Mondial's ability to fairly and adequately represent the interests of the Class. Moreover, these new declarations raise unique defenses, only applicable to Dikla Mondial and not other class members, that prohibit this Court from appointing it as Lead Plaintiff in this litigation.

---

[1] On July 24, 2007, Dikla Mondial filed a document styled "Reply Memorandum of Law in Support of Motion of Dikla Mondial Mutual Fund for Consolidation of Cases, Appointment as Lead Plaintiff and for Approval of Lead Counsel." This Reply contained important new information that should have properly been disclosed with Dikla Mondial's original motion, along with new legal arguments never before raised by Dikla Mondial. Accordingly, the Chen Group hereby exercises its right to reply to Dikla Mondial's filing, herein.

[2] The motion to be appointed Lead Plaintiff by movant Brickman Investments was withdrawn on 7/25/2007.

Dikla Mondial's legal authority to bring this action and to move for Lead Plaintiff *on behalf of owners of its mutual fund* remains unclear. Further, the declaration submitted by Migdal CEO Asa Sasson has only served to obfuscate the true legal structure of Dikla Mondial and, for the first time, has disclosed that movant Dikla Mondial has vested in Migdal, its admitted "paid fund manager", the legal authority to act on its behalf. Yet Dikla Mondial, and *not* Migdal, filed a motion to be appointed Lead Plaintiff.

Dikla Mondial has also failed to show this Court that it will fulfill its duty to the Class members pursuant to the PSLRA by effectively supervising its chosen Israeli lead counsel Jacob Sabo. Instead of addressing the serious misrepresentations made to this Court by its proposed lead counsel, Dikla Mondial has glossed over its lack of oversight and has chosen instead to embellish other aspects of Israeli counsel's biography.

Finally, the new declarations submitted by Dikla Mondial raise serious jurisdictional questions regarding the propriety of appointing a foreign movant (who has also chosen foreign lead counsel for the Class) as Lead Plaintiff against a foreign defendant in this action. This extraterritoriality will create unique defenses that the Chen Group, comprised of American citizens, is not subject to, should Dikla Mondial be appointed Lead Plaintiff. Clearly, appointing Dikla Mondial Lead Plaintiff runs a serious risk of severely prejudicing Class members' rights.

The Chen Group, a proper, cohesive group under the PSLRA, has the largest financial interest in this litigation, is the presumptive lead plaintiff in the action, and has chosen counsel fully adequate and capable of effectively prosecuting this action on behalf of the Class. Dikla Mondial has failed to rebut with proof the presumption that the Chen Group should be appointed Lead Plaintiff. As such, the Chen Group respectfully requests that the Court grant its motion to be appointed Lead Plaintiff, and deny the motion of competing movant Dikla Mondial.

# ARGUMENT

## I. Dikla Mondial Should Not Be Appointed Lead Plaintiff

### A. Dikla Mondial Has Not Established Its Authority To Act As Lead Plaintiff In This Litigation

Dikla Mondial, a mutual fund, has no standing to bring this action. Despite a belated declaration by Migdal CEO Asa Sasan explaining the nature of Dikla Mondial's relationship with its investment advisor Migdal, Dikla Mondial has submitted no proof that it is authorized ***by the owners of the Dikla Mondial mutual fund*** to bring suit to recover for investment losses. Moreover, Dikla Mondial can cite to no supporting caselaw that removes it from the "investment advisor" analysis, previously set forth in the Chen Group's Opposition, whereby, as the movant, it must prove it has the attorney-in-fact authority to bring this action for its clients.

For the proposition that Dikla Mondial, as a mutual fund and therefore an "institutional investor", has the implied legal authority to file its Lead Plaintiff motion, Dikla Mondial cites *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan 25, 2006) and *Barnet v. Elan Corp.*, 236 F.R.D. 158, 161 (S.D.N.Y. 2005), which do not involve mutual funds at all; and *Malasky v. IAC/InteractiveCorp,* 2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Mar. 7, 2005), which merely cites Black's Law Dictionary as defining "institutional investor" to include mutual funds. None of these cases establish that a mutual fund has automatic authority, or need not prove its authority, to sue for losses.

Next, Dikla Mondial relies upon the self-serving declarations of Asa Sasson and its proposed Israeli lead counsel Jacob Sabo to argue that Dikla Mondial has standing to file its Lead Plaintiff motion. However, these declarations spotlight a fatal flaw in Dikla Mondial's motion, where, by Dikla Mondial's own admissions, it is Migdal, and not Dikla Mondial, that should have been the proper movant – "*Migdal, its paid fund manager, is its authorized agent to purchase and sell*

3

*securities and to enforce rights flowing from stock ownership.*" Dikla Mondial Reply, p. 5. Yet no *evidence* has been offered to even establish that Dikla Mondial, the movant, has provided its "paid fund manager" Migdal the authority to act on its behalf. It is not enough for Sasson, Migdal's CEO, to make this assertion in a Declaration – such vesting of attorney-in-fact authority must emanate from the movant itself, Dikla Mondial.

Notwithstanding that Dikla Mondial has apparently ceded its authority to its admitted "paid fund manager" Migdal who would effectively be the Lead Plaintiff if this Court granted Dikla Mondial's Lead Plaintiff motion, Dikla Mondial's claim that as a mutual fund it implicitly has the authority to pursue claims for losses is not the universal view in the courts of the United States. As noted in the Chen Group's Opposition, in *In re Peregrine Sys. Sec. Litig.*, 2002 U.S. Dist. LEXIS 27690 at *58-*59 (S.D. Cal. October 9, 2002) the court was presented with a similar motion to be appointed Lead Plaintiff by the Needham Growth Fund, a mutual fund like Dikla Mondial. The court analyzed the fund's standing to be appointed Lead Plaintiff, found that it did not have authority, and determined that "the court is unable to discern any reason why the Needham Growth Fund is able to function as 'a person' under the PSLRA and finds that it is not an appropriate Lead Plaintiff…" Considering that the *Peregrine* court denied the Needham Growth Fund's motion upon identical grounds, this Court should similarly not appoint Dikla Mondial, particularly in light of its admission that it has ceded full control of this litigation to its "paid fund manager" Migdal.

In short, Dikla Mondial's attempts in its belated Reply to clarify its standing to represent the Class have only raised further questions, and jeopardize Class members' rights to obtain a fair recovery in this action in the event that Migdal – a "paid fund manager" with no financial loss of its own and no similar motive to prosecute this litigation to a successful resolution like the Chen Group – is placed in control of this case by virtue of Dikla Mondial's appointment as Lead Plaintiff. Dikla Mondial's motion to be appointed Lead Plaintiff should therefore be denied.

4

B. **Dikla Mondial Is Subject to Unique Defenses as a Foreign Plaintiff Suing a Foreign Company On Behalf of Allot Shareholders**

United States courts must consider the question of the *res judicata* effect of a judgment in favor of Allot Communications in this class action. *In re Royal Ahold N.V. Sec. and Erisa Litig.*, 219 F.R.D. 343, 352 (D.Md. 2003). "Foreign courts might not recognize or enforce such a decision from an American court, which would allow foreign plaintiffs in the class to file suit against the defendant again in those foreign courts." *Id*. Dikla Mondial has failed to provide any evidence regarding whether the foreign court of Dikla Mondial's citizenry, Israel, may recognize a decision of this court. Dikla Mondial's own willingness to submit to the jurisdiction of this court does not speak to the issue of a foreign court's recognition of this Court's decision. "A strong possibility or near certainty that a foreign court will not recognize a judgment in favor of the defendant as a bar to the action of its own citizens may be the basis for eliminating foreign purchasers from the class." *Id*. (*citing Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d. Cir. 1975)).

If Dikla Mondial is selected Lead Plaintiff, it may face problematic unique defenses. A class representative's claims are not typical if that representative is subject to unique defenses. *In re AOL Time Warner, Inc.,* 2006 WL 903236 (S.D.N.Y. April 6, 2006); *See Gary Plastic Packaging Co. V. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 179-80 (2d. Cir. 1990) (class certification properly denied because plaintiff was inappropriate class representative as its claim was subject to several unique defenses), *cert. denied*, 489 U.S. 1025 (1991). As a foreign mutual fund in a case against a foreign company, the doctrines of *res judicata* (discussed above) and *forum non conveniens* open Dikla to a range of defenses which would not apply to the class at large, but which could result in the dismissal of the case should Dikla be appointed Lead Plaintiff. "In particular, courts have refused to appoint a foreign movant to be…lead plaintiff because the defendants were subject to unique defenses of lacking subject matter jurisdiction and *forum non conveniens*." *In re Cable &*

5

*Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003) (*citing Tri-Star Farms Ltd. V. Marconi, PLC,* 225 F.Supp.2d 567, 573 n. 7 (W.D. Pa. 2002); *In re Bann Co. Sec. Litig.*, 103 F.Supp.2d 1, 10-11, 25 (D.D.C. 2000) (holding that foreign buyers of shares in a foreign company could not assert claims under United States securities laws.)

Whether Defendants will succeed eventually on any of these defenses is not the issue before the Court. What is important is that the Class not be saddled with a representative who is subject to a unique defense. "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *In re Liner Board Anti-trust Litigation*, 203 F.R.D. 197, 211 (E.D. Penn. 2001), *aff'd.*, 305 F.3d 145 (3d Cir. 2002), *cert. denied*, 538 U.S. 977 (2003); *see State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9 Cir. 1997). Therefore, Dikla Mondial should not be appointed as Lead Plaintiff.

### C. Dikla Mondial's Failure To Investigate The Troubling Record Of Its Proposed Lead Counsel Sabo Renders It Inadequate To Be Appointed Lead Plaintiff

Dikla Mondial has failed to rebut the Chen Group's contention that its proposed Israeli lead counsel Jacob Sabo has misrepresented his credentials to this Court, and has provided no reason why it failed to conduct a basic inquiry that could have protected the Class from counsel that does not possess the federal appointments it asserts. *See* Chen Group Opposition, pp. 11-13.

Sabo, by declaring in his resume that he "***currently serves*** as Co-Lead Counsel or supporting Lead or co-Lead counsels in numerous securities fraud actions throughout the United States, including, among others" the *Gilat, Lumenis* and *Amdocs* litigation (he lists no other current cases *but* these three cases), lulls one into the mistaken impression that Sabo at least serves in a Co-Lead position in one of these cases, "currently." This impression is important, as Sabo's representations serve to assure this Court that Sabo has the ability and experience to

6

adequately represent the Class were he to be appointed as lead counsel. Had Sabo intended to be truthful, he would have never described his current role in any of the previously-mentioned cases as one of several options including "Co-Lead Counsel" when in fact he is not "Co-Lead Counsel" in any of the cases listed. Further, the usage of the terms "supporting Lead or co-Lead Counsels" is not a common term and is misleading on a resume – it connotes no federal leadership appointment in a PSLRA securities fraud case, and is designed to deceive.

The only conclusion this Court can make is that Dikla Mondial has ***not*** diligently managed its chosen counsel, and this Court cannot appoint Dikla Mondial Lead Plaintiff in this action.

## II. The Chen Group is the Presumptive Lead Plaintiff

### A. The Chen Group Has the Largest Financial Interest in this Action and Is An Acceptable Group under the PSLRA

The Chen Group, with losses of $42,789.64, has the "largest financial interest in the relief sought by the Class" among those seeking appointment as Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii). The Chen Group has clearly demonstrated that it is the most adequate Lead Plaintiff to represent the Class in light of its cohesiveness, ability to work together, willingness to control the litigation and effectively oversee counsel, and ability to communicate and make decisions, ***with and without counsel present***, about the litigation. The Chen Group members are fully familiar with their fiduciary obligations as class representatives under Rule 23(a)(4), and they have explained, in great detail, how they will proactively discharge those obligations. *See generally* Chen Group Decl. They will also act as a "single voice" in directing counsel and will bring their broad experiences to the forefront to protect the interests of the Class. *See In re Oxford Health Plaints, Inc.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (recognizing the benefit of

7

"pooling" the "knowledge and experience" of "multiple Lead Plaintiffs."). In sum, the Chen Group represents precisely the type of "group of persons" – small, cohesive, cognizant, and in control – that Congress envisioned when it enacted the PSLRA.

The only case cited by Dikla Mondial to rebut the Chen Group's cohesiveness, evidenced by the substantive, detailed declaration signed by its members, is of no consequence. *See* Dikla Mondial Reply at 3, fn.7. In *Miller v. Ventro Corp.*, No. C 01-01287 SBA, 2001 U.S. Dist. LEXIS 26027 (N.D. Cal. Nov. 28, 2001), in rejecting a group of shareholders as lead plaintiff, the court noted that "the Group has stated that, following the hearing before this Court, it has created a structure to control the litigation by which the six members of the Group will meet regularly and make decisions by consensus." *Id*. at 31. Here, the Chen Group (comprised of only three members, not six), created a structure to control the litigation in anticipation of its necessity to further the interests of Class, not simply in response to a court's admonition. Further, unlike in *Miller* where "the Group was essentially created by three different law firms" that came together to aggregate losses, the Chen Group has chosen one law firm – Kahn Gauthier Swick, LLC – as lead counsel to represent the class, *Id.*

Accordingly, Dikla Mondial's objections that the Chen Group lacks cohesion and is inadequate to serve as lead plaintiff in this litigation ring hollow. While Dikla Mondial suffers from a plethora of adequacy and typicality concerns that render it unable to fairly represent the class, in addition to numerous unique defenses, the Chen Group is the most adequate choice to serve as Lead Plaintiff. Further, the Chen Group has selected Kahn Gauthier Swick, LLC ("KGS") to serve as Lead Counsel for the Class. KGS is highly experienced in leading the successful prosecution of securities class actions, and currently serves as Lead Counsel in

8

numerous securities litigations. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all the foregoing reasons, the Chen Group respectfully requests that this Court: (1) consolidate all related actions; (2) appoint the Chen Group as Lead Plaintiffs in the Action; (3) approve the Chen Group's selection of Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: August 3, 2007                               Respectfully submitted,

                                                    KAHN GAUTHIER SWICK, LLC

                                                    /s/ Kim E. Miller_____

                                                    Kim E. Miller (KM-6996)
                                                    Michael A. Swick (MS-9970)
                                                    12 E. 41st Street, 12th Floor
                                                    New York, NY 10017
                                                    Telephone: (212) 696-3730
                                                    Facsimile: (504) 455-1498

                                                    KAHN GAUTHIER SWICK, LLC
                                                    Lewis S. Kahn
                                                    650 Poydras St., Suite 2150
                                                    New Orleans, Louisiana 70130
                                                    Telephone: (504) 455-1400
                                                    Facsimile: (504) 455-1498

                                                    *Counsel for the Chen Group and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that this Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on August 3, 2007.

/s/ Kim E. Miller_____